## COMMONWEALTH *vs.* RICHARD MAHAR.

Suffolk. February 6, 2004. - June 7, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Assistance of counsel, Agreement between prosecutor and defendant. *Constitutional Law,* Assistance of counsel. *Armed Home Invasion.*

This court concluded that a defendant who rejects a plea bargain offer made by the Commonwealth prior to trial, and is subsequently convicted and sentenced to a longer term, may challenge his sentence on the ground that his attorney rendered ineffective assistance of counsel in connection with the defendant's decision to reject the offer [14-15]; in the circumstances of this case, however, where his attorney's advice was reasonable, the defendant failed to establish that his attorney was constitutionally ineffective [15-19]. SOSMAN, J., concurring.

INDICTMENT found and returned in the Superior Court Department on March 3, 1997.

Following review by this court, 430 Mass. 643 (2000), a motion for a new trial, filed on May 30, 2001, was heard by *Thomas E. Connolly,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Charles W. Rankin* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

*Thomas F. Reilly,* Attorney General, & *David M. Lieber,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

CORDY, J. In this case we must decide whether a defendant who rejects a plea bargain offer made by the Commonwealth prior to trial, and is subsequently convicted and sentenced to a longer term, may challenge his sentence on the ground that his attorney rendered ineffective assistance in connection with his

decision to reject the offer. While we conclude that such a claim may be brought, we also conclude that it was properly rejected in the circumstances presented here.[1]

*Background.* After entering a home and threatening its occupants with a machete, Richard Mahar was indicted on several charges, including armed home invasion, armed assault with intent to rob, assault by means of a dangerous weapon, assault and battery, and malicious destruction of property. Prior to trial, he rejected the Commonwealth's offer to dismiss the indictment charging armed home invasion (which carries a twenty-year minimum sentence) and to recommend a sentence of six years' imprisonment in exchange for his plea of guilty to the other indictments.[2]

At trial, it was established that on March 3, 1997, the defendant, armed with a machete, arrived outside a home where his girl friend was visiting. He obtained entrance to the home (concealing the weapon he carried) and wielded the machete against those present inside. Relying on *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58 (1997), Mahar's primary defense against the armed home invasion charge was that he was invited into the home, that his entry therefore was consensual and lawful, and that the Commonwealth thus could not prove a necessary element of the offense.[3] In accordance with this theory, defense counsel requested that the judge instruct the jury that they could not convict if they found that Mahar "was permitted to enter the house by a lawful occupant." The judge declined to give such an instruction, instead telling the jury that they could find unlawful entry sufficient to convict if they found that Mahar entered the home "for the purposes of committing a crime therein." The jury subsequently convicted Mahar of all of the

[1]We acknowledge the amicus brief submitted by the Attorney General.

[2]Armed assault with intent to rob has a maximum sentence of twenty years, G. L. c. 265, § 18; assault by means of a dangerous weapon provides for a maximum sentence of five years, G. L. c. 265, § 15B. Assault and battery and malicious destruction of property carry maximum sentences of two and one-half years, G. L. c. 265, § 13A, and ten years, G. L. c. 266, § 127, respectively.

[3]The circumstances in which Mahar gained entrance into the house were hotly disputed at trial. See *Commonwealth* v. *Mahar*, 430 Mass. 643, 647, 650-651 (2000).

charges with the exception of two of the four indictments charg-
ing assault by means of a dangerous weapon. He was sentenced
to from twenty to twenty-five years' imprisonment.

On direct appeal, this court affirmed Mahar's conviction of
armed home invasion, concluding that even if he was invited
into the home, the occupants were unaware that he was armed
with a dangerous weapon and intended to commit an assault,
and that any "purported consent [to the entry therefor] cannot
be considered legally significant." *Commonwealth* v. *Mahar*,
430 Mass. 643, 652 (2000). Mahar then filed a motion for a
new trial based on the ineffectiveness of his counsel's advice in
connection with his decision to reject the Commonwealth's plea
bargain offer. In support of the motion, Mahar submitted an af-
fidavit in which he averred (1) that his trial counsel "advised
[him] that in order to convict [on the charge of armed home
invasion] the Commonwealth had to prove that the persons
inside the house did not consent to [his] ent[ry]," and (2) that
"[i]f [he] had known that consent to entry is not a defense to
armed home invasion . . . [he] would have accepted the [plea]
offer." His trial counsel also submitted an affidavit, stating (1)
that on the basis of language in *Commonwealth* v. *Dunn, supra,*
she "formed the belief . . . that the Commonwealth would be
required to prove that [Mahar's] entry . . . was without . . .
consent," (2) that she "so advised" him, and (3) that "[i]f [she]
had advised him in advance of trial of the jury instruction that
was actually delivered [that he could be convicted if the jury
found that he entered the home with the purpose of committing
a crime therein], he would probably have accepted the plea
agreement that was offered to him shortly before trial."

Finding that trial counsel's reliance on *Commonwealth* v.
*Dunn, supra,* was not unreasonable and that she was not inef-
fective for failing to anticipate how the Supreme Judicial Court
might interpret the armed home invasion statute, the trial judge
denied the motion.[4] Mahar appealed, and we transferred his ap-
peal to this court on our own motion.

---

[4]The judge reached Mahar's ineffective assistance of counsel claim only
"in an exercise of caution," already having held it to be waived because he
failed to raise it on direct appeal. The judge was correct that postconviction
motions for a new trial based on grounds available but not raised on direct ap-

*Discussion.* It is beyond dispute that a defendant's decision whether to plead guilty or proceed to a trial is a critical stage in a criminal proceeding for which he is constitutionally entitled to the effective assistance of counsel. See, e.g., *Moran* v. *Burbine*, 475 U.S. 412, 431 (1986) ("Sixth Amendment right to counsel . . . attach[es] . . . after the initiation of formal charges"); *Hill* v. *Lockhart*, 474 U.S. 52, 56 (1985), quoting *McMann* v. *Richardson*, 397 U.S. 759, 771 (1970) ("defendant [who] . . . enters his plea upon the advice of counsel [entitled to] advice . . . 'within the range of competence demanded of attorneys in criminal cases' "); *Commonwealth* v. *Soffen*, 377 Mass. 433, 436 (1979) ("right [to counsel] attaches to that stage of the criminal process during which the defendant is deciding how to plead"). That right plainly includes counsel's effective assistance in connection with the defendant's decision whether to accept or reject a plea bargain offer made by the Commonwealth. See, e.g., *Hill* v. *Lockhart*, *supra* at 58; *Osborne* v. *Commonwealth*, 378 Mass. 104, 108-113 (1979). See also *Pham* v. *United States*, 317 F.3d 178, 182 (2d Cir. 2003); *Magana* v. *Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001); *United States* v. *Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997), cert. denied, 523 U.S. 1144 (1998); *United States* v. *Day*, 969 F.2d 39, 43 (3d Cir. 1992); *Toro* v. *Fairman*, 940 F.2d 1065, 1067 (7th Cir. 1991), cert. denied, 505 U.S. 1223 (1992); *State* v. *Donald*, 198 Ariz. 406, 413 (Ct. App. 2000), cert. denied, 534 U.S. 825 (2001); *In re Alvernaz*, 2 Cal. 4th 924, 934-935 (1992); *Cottle* v. *State*, 733 So. 2d 963, 965-966 (Fla. 1999); *Williams* v. *State*, 326 Md. 367, 378 (1992); *State* v. *Taccetta*, 351 N.J. Super. 196, 200 (App. Div. 2002); *In re Plante*, 171 Vt. 310, 313 (2000). Although we have not had occasion to consider the issue, we agree with nearly every other appellate court that has, that if the offer is rejected because of the ineffective assistance

peal are waived. See Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001). See also *Commonwealth* v. *Pike*, 53 Mass. App. Ct. 757, 760 n.4 (2002). However, because the substantial risk of a miscarriage of justice standard applicable to waived claims and the standard applicable to ineffective assistance of counsel claims are, insofar as both determine whether error affected the outcome, "two sides of the same coin," *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.4 (2002), the issue of waiver here is without substantive effect. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994).

of counsel, the fact that the defendant subsequently receives a fair trial does not ameliorate the constitutional harm that occurred in the plea consideration process. See *In re Alvernaz, supra,* and cases cited in the margin.[5]

In order to make out a claim of ineffective assistance of counsel, a defendant must of course show serious incompetency of counsel (behavior falling measurably below that which might be expected from an ordinary fallible lawyer) and prejudice that, in this context, means a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington,* 466 U.S. 668, 694 (1984). Cf. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974) ("serious incompetency, inefficiency, or inattention of counsel . . . [that] has likely deprived the defendant of an otherwise available, substantial ground of defence").

Not surprisingly, the majority of cases in which courts have

---

[5]For courts concluding that a fair trial cannot cure certain constitutional infirmities in the plea negotiation process, see, e.g., *United States* v. *Rashad,* 331 F.3d 908 (D.C. Cir. 2003); *United States* v. *Ridgeway,* 321 F.3d 512 (5th Cir. 2003); *Pham* v. *United States,* 317 F.3d 178 (2d Cir. 2003); *Tse* v. *United States,* 290 F.3d 462 (1st Cir. 2002); *Magana* v. *Hofbauer,* 263 F.3d 542 (6th Cir. 2001); *Cullen* v. *United States,* 194 F.3d 401 (2d Cir. 1999); *Paters* v. *United States,* 159 F.3d 1043 (7th Cir. 1998); *United States* v. *Gordon,* 156 F.3d 376 (2d Cir. 1998); *United States* v. *Carter,* 130 F.3d 1432 (10th Cir. 1997), cert. denied, 523 U.S. 1144 (1998); *Boria* v. *Keane,* 99 F.3d 492 (2d Cir. 1996), cert. denied, 521 U.S. 1118 (1997); *Engelen* v. *United States,* 68 F.3d 238 (8th Cir. 1995); *Coulter* v. *Herring,* 60 F.3d 1499 (11th Cir. 1995), cert. denied sub nom. *Coulter* v. *Jones,* 516 U.S. 1122 (1996); *United States* v. *Blaylock,* 20 F.3d 1458 (9th Cir. 1994); *United States* v. *Day,* 969 F.2d 39 (3d Cir. 1992); *Toro* v. *Fairman,* 940 F.2d 1065 (7th Cir. 1991), cert. denied, 505 U.S. 1223 (1992); *Diaz* v. *United States,* 930 F.2d 832 (11th Cir. 1991); *Turner* v. *Tennessee,* 858 F.2d 1201 (6th Cir. 1988), vacated on other grounds, 492 U.S. 902 (1989); *Johnson* v. *Duckworth,* 793 F.2d 898 (7th Cir.), cert. denied, 479 U.S. 937 (1986); *United States ex rel. Caruso* v. *Zelinsky,* 689 F.2d 435 (3d Cir. 1982); *State* v. *Donald,* 198 Ariz. 406 (Ct. App. 2000), cert. denied, 534 U.S. 825 (2001); *Cottle* v. *State,* 733 So. 2d 963 (Fla. 1999); *Lloyd* v. *State,* 258 Ga. 645 (1988); *People* v. *Curry,* 178 Ill. 2d 509 (1997); *Lyles* v. *State,* 178 Ind. App. 398 (1978); *Williams* v. *State,* 326 Md. 367 (1992); *State* v. *Taccetta,* 351 N.J. Super. 196 (App. Div. 2002); *Larson* v. *State,* 104 Nev. 691 (1988); *State* v. *Simmons,* 65 N.C. App. 294 (1983); *Hanzelka* v. *State,* 682 S.W.2d 385 (Tex. Ct. App. 1984); *In re Plante,* 171 Vt. 310 (2000); *Becton* v. *Hun,* 205 W. Va. 139 (1999); *State* v. *James,* 48 Wash. App. 353 (1987); *State* v. *Lentowski,* 212 Wis. 2d 849 (1997). Only the courts of Louisiana, see *State* v. *Monroe,* 757 So. 2d 895 (La. Ct. App. 2000), and Utah, see *State* v. *Knight,* 734 P.2d 913, 919 n.7 (Utah 1987), hold to the contrary.

sustained claims of ineffectiveness of counsel in the context of plea bargaining have been based on the failure of counsel either to communicate the government's plea offer to the defendant, see, e.g., *Pham* v. *United States, supra* at 181-183; *Lyles* v. *State*, 178 Ind. App. 398, 402 (1978); *State* v. *Simmons*, 65 N.C. App. 294, 301 (1983), or to explain its implications accurately (including the difference between the sentence recommendation contained in the offer and the maximum sentence that could be imposed on conviction after trial), see, e.g., *United States* v. *Rashad*, 331 F.3d 908, 911-912 (D.C. Cir. 2003); *Magana* v. *Hofbauer, supra* at 545; *Cullen* v. *United States*, 194 F.3d 401, 402-403 (2d Cir. 1999); *Boria* v. *Keane*, 99 F.3d 492, 494 (2d Cir. 1996), cert. denied, 521 U.S. 1118 (1997); *United States* v. *Day, supra* at 44. (Neither of these circumstances is present in this case.) Such cases present fact issues that can normally be resolved without second guessing the judgmental aspects of the advice of counsel. Nevertheless, courts that have considered the issue have concluded, albeit cautiously, that other forms of incompetent advice at the plea bargain stage may also form the basis for postconviction relief if the element of prejudice can be adequately proved. See *United States* v. *Rashad, supra* at 911-912 (attorney underestimated sentencing exposure and strength of government's case; remanded for finding of prejudice); *Tse* v. *United States*, 290 F.3d 462, 463, 466 (1st Cir. 2002) (attorney allegedly erroneously advised that government could not prosecute certain charges; remanded for limited evidentiary hearing); *Paters* v. *United States*, 159 F.3d 1043, 1044, 1048-1049 (7th Cir. 1998) (attorney erroneously advised that defendant could only be found guilty for drugs in his physical possession and that he had "nothing to lose" by proceeding to trial; remanded for hearing on prejudice); *Toro* v. *Fairman, supra* at 1068 (attorney advised against guilty plea despite "very strong" evidence against defendant; court denied relief because inadequate showing of prejudice); *In re Alvarnez, supra* at 930-931, 945 (incorrect advice as to sentencing exposure after trial combined with prediction of acquittal may have been ineffective but prejudice not proved); *State* v. *Lentowski*, 212 Wis. 2d 849, 854, 857 (1997) (incorrect advice as to defenses in sexual assault case was ineffective; new trial ordered).

In considering claims based on the incompetence of the legal advice bearing on the likelihood of acquittal, a court must be acutely aware of the temptation of a defendant to second guess his decision and counsel's advice in light of subsequent adverse events. By their nature, assessments of the likelihood of acquittal involve layers of judgment and a highly uncertain element of prognostication, and it is extremely difficult to assess with hindsight the soundness of the earlier judgments. Consequently, we caution, as have other appellate courts, "that a defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel." *In re Alvernaz, supra* at 937. On the facts of the present case, we conclude, as the motion judge did, that Mahar failed to establish that his counsel was constitutionally ineffective, and thus do not reach the issues of prejudice and remedy.

On the issue of incompetency, Mahar argues, essentially, that his attorney's conclusion that the Commonwealth must prove (but could not) that he was not invited into the house was based on a wholly unreasonable understanding of the law.[6] We evaluate whether the attorney's apparent advice was "within the range of competence demanded of attorneys in criminal cases," *McMann* v. *Richardson,* 397 U.S. 759, 771 (1970), at the time that it was given. We do not view such advice retrospectively through the lens of subsequent events that may have proved it wrong. See *Commonwealth* v. *Duhamel,* 391 Mass. 841, 844 (1984) (*"At the time of trial,* no clear precedent existed to guide counsel . . ." [emphasis added]); *Commonwealth* v. *Adams,* 374 Mass. 722, 729-730 (1978) ("test is not to be made with the advantage of hindsight").

---

[6]Without citation to legal authority, Mahar also argues that "to be sure [of her conclusion]," his attorney "could easily have supplemented her reading of the statute [defining the offense] and [of *Commonwealth* v. *Dunn,* 43 Mass. App. Ct. 58 (1977), the case on point] with inquiries of the trial judge regarding his anticipated legal rulings." We find implausible the suggestion that attorneys should confirm their view of the law with trial judges who would be generally disinclined to commit to any "anticipated legal rulings" before having heard the evidence.

In *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58 (1997), decided barely five months before the defendant's trial commenced, the Appeals Court interpreted the meaning of the term "enters" as used in G. L. c. 265, § 18C,[7] the statute setting forth the crime of armed home invasion, in the following manner:

> "The term 'enters' within the statute is given no special definition. Nonetheless, the word is to be construed as an unlawful entry, consistent with its use in a criminal context. See Black's Law Dictionary 533 (6th ed. 1990) ('In criminal law, entry is the unlawful making [of] one's way into a dwelling or other house, for the purpose of committing a crime therein'). See also *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 355 (1988) (for purposes of armed assault within a dwelling, G. L. c. 265, § 18A, entry must be 'unprivileged' or unlawful). Indeed, the act's very caption — 'An Act Establishing the Crime of Home Invasion' — bespeaks legislative intent that a consensual or privileged entry is not an 'invasion.'
>
> "Further, the word 'enters' appears in related statutory contexts, including G. L. c. 265, § 18A, and G. L. c. 266, §§ 14-19 (pertaining generally to burglary and to breaking and entering). As here, the word contemplates the common law meaning of an unlawful, or nonconsensual, entry."

*Commonwealth* v. *Dunn*, *supra* at 60. On the basis of this interpretation, according to her affidavit, Mahar's attorney

---

[7]General Laws c. 265, § 18C, provides, in relevant part:

"Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years."

"formed the belief that the trial judge would instruct the jury that the Commonwealth would be required to prove that the entry into the dwelling . . . was without the consent of a lawful occupant," and "so advised" her client. That belief, finding support in a recent case interpreting the very statute at issue, and in authorities cited in that case, see *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 355-357 (1988) (defendant could not be found guilty of armed assault within dwelling, see G. L. c. 265, § 18A, if he had right to enter); see also *Commonwealth* v. *Robbins*, 422 Mass. 305, 313-316 (1996) (same under G. L. c. 266, § 14), was reasonable.[8] Accord *Commonwealth* v. *Duhamel, supra* at 844-845, quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) (attorney's performance did not "fall measurably below that which might be expected from an ordinary fallible lawyer" where actions supported by existing case law). See *Commonwealth* v. *Mula*, 19 Mass. App. Ct. 993, 995 (1985) (no indication in case law that motion would have been allowed). That her prediction as to the charge the judge was likely to give the jury proved to be inaccurate does not change the analysis. We do not require attorneys to foretell the future: the attorney's advice was reasonable, and it did not become incompetent because a subsequent judicial opinion made clear an aspect of the offense that previously was less certain. Cf. *Commonwealth* v. *Smith*, 427 Mass. 245, 256-257 (1998). Mahar's counsel was not ineffective.

The order of the Superior Court judge denying Mahar's motion for a new trial is affirmed.[9]

*So ordered.*

---

[8]Indeed, as we expressed in *Commonwealth* v. *Mahar*, 430 Mass. 643, 650-653 (2000), elaborating on the language in the Appeals Court's opinion in *Commonwealth* v. *Dunn, supra*, the attorney's basic conclusion that consensual entry would have been a bar to conviction was not erroneous: the facts as developed at trial simply did not establish the type of consent that would be legally sufficient.

[9]In her separate opinion, Justice Sosman discusses at some length the difficulties entailed in determining whether a defendant has been prejudiced by incompetent advice, and, if so, the problematic process of fashioning a fair and adequate remedy. These issues are not before us in this case, but have been extensively discussed, considered, and weighed by courts in other jurisdictions. While they are no doubt difficult issues to resolve, they are best resolved in the context of the facts and circumstances of specific cases.

SOSMAN, J. (concurring). I concur in the court's analysis that nothing in defense counsel's assessment of what jury instruction would be given on the element of "entry" fell measurably below the standard of an ordinary fallible lawyer, and that the defendant has therefore failed to satisfy even the first prong of his claim of ineffective assistance of counsel, let alone the second prong. *Ante* at 17-19. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Where the factual premise of the claim has not been established, it is unnecessary — and in my view unadvisable — to endorse the theory that poor advice about a defendant's prospects of acquittal at trial, that allegedly influenced that defendant to reject a favorable plea offer from the prosecution, is a constitutional infirmity that would justify relief from a subsequent conviction after a fair trial. Our standard principles for assessing claims of ineffective assistance of counsel are well developed with respect to defective advice that caused a defendant to waive his right to trial and plead guilty and with respect to deficient performance at trial that deprived the defendant of a potentially viable defense. However, they do not translate readily into the assessment of an attorney's advice that caused a defendant to assert (rather than waive) his constitutional rights, whereupon those rights were respected and he was accorded a fair trial. Application of those principles in this very different context poses significant conceptual and pragmatic problems, and we should hesitate before announcing our willingness to extend them.

Despite the admittedly wide acceptance of the proposition by other courts, the Supreme Court of the United States has never indicated that the right to the effective assistance of counsel in the Sixth Amendment to the United States Constitution is implicated in the decision to reject a prosecutor's proffered plea bargain. To the contrary, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States* v. *Cronic*, 466 U.S. 648, 658 (1984). "[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal

representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." *Strickland* v. *Washington*, 466 U.S. 668, 689 (1984). "In giving meaning to the requirement [of effective assistance], however, we must take its purpose — to ensure a fair trial — as the guide." *Id.* at 686. Thus, analysis of a claim of ineffective assistance of counsel "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. . . . Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him" (citations omitted). *Lockhart* v. *Fretwell*, 506 U.S. 364, 372 (1993).

If a defendant, poorly advised concerning the benefits of accepting a lenient plea offer, rejects that offer and is later convicted at trial, what has been lost is an opportunity, not a "right to which the law entitles him." *Id.* There is no "right" to a plea offer, and no right to have charges with minimum mandatory sentences dropped so as to make some lesser sentence lawful. Nor is there any "right" to enforce an accepted plea bargain. See *Mabry* v. *Johnson*, 467 U.S. 504, 505, 510-511 & n.11 (1984); *United States* v. *Papaleo*, 853 F.2d 16, 18-20 (1st Cir. 1988). For a variety of completely fortuitous reasons, opportunities to plead to reduced charges can materialize for some defendants (but not for others), and those opportunities can, for equally fortuitous reasons, evaporate. When poor advice or misinformation has caused a defendant to forgo a very favorable plea opportunity, that may strike us as regrettable or unfortunate (and may tempt many judges to try and restore that lost opportunity), but it is not the equivalent of an ill-advised waiving of constitutional rights or depriving the defendant of a fair trial. And, if the defendant has, after rejecting the opportunity offered in a plea bargain, been convicted at a fair trial, we are assured that there is nothing "unreliable" about that result and nothing "fundamentally unfair" in imposing a lawful sentence based on that conviction. *Lockhart* v. *Fretwell, supra.*

I recognize that most courts have entertained claims of ineffective assistance of counsel in the context of a rejected plea

offer. Because an attorney's advice causing a defendant to plead guilty implicates the right to effective assistance, see *Hill* v. *Lockhart*, 474 U.S. 52, 58 (1985), the theory is that advice causing a defendant to reject an offer must implicate the right in an identical way.[1] Thus, where *Hill* v. *Lockhart, supra,* has imported the criteria for assessing ineffectiveness of counsel set forth in *Strickland* v. *Washington, supra,* into an analysis of whether a defendant should be allowed to withdraw a guilty plea, courts assume that those same *Strickland* tests apply to a defendant's decision to go to trial.[2] Of course, a defendant who goes to trial is not the equivalent of a defendant who has pleaded guilty, and equating the two for these purposes is misguided. "[A] defendant whose guilt is determined after a fair trial conducted with all of the guarantees of the constitution, has not suffered a constitutional deprivation, even where his lawyer's conduct prevented him from negotiating or accepting a better deal." *Garcia* v. *State*, 736 So. 2d 89, 91 (Fla. Dist. Ct. App. 1999) (Gross, J., concurring specially). See *State* v. *Knight*, 734 P.2d 913, 919 n.7 (Utah 1987), quoting *State* v. *Geary*, 707 P.2d 645, 646 (Utah 1985) (rejecting ineffective assistance claims premised on rejection of plea bargain offer because "our state and federal constitutions guarantee fair trials, not plea bargains"); *Rasmussen* v. *State*, 280 Ark. 472, 475 (1983) (Adkisson, C.J., dissenting) (although failure to communicate plea offer violates counsel's ethical duty, ineffective assistance claim must fail if defendant is subsequently convicted at fair trial).

Beyond the conceptual anomaly of equating defendants who plead guilty with defendants who go to trial, the cases applying

---

[1]See, e.g., *Magana* v. *Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001); *Engelen* v. *United States*, 68 F.3d 238, 241 (8th Cir. 1995); *Coulter* v. *Herring*, 60 F.3d 1499, 1503-1504 & n.7 (11th Cir. 1995), cert. denied sub nom. *Coulter* v. *Jones*, 516 U.S. 1122 (1996); *United States ex rel. Caruso* v. *Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982); *In re Alvernaz*, 2 Cal. 4th 924, 933-935 (1992); *State* v. *James*, 48 Wash. App. 353, 361 n.2 (1987).

[2]The court today makes the same assumption, citing *Hill* v. *Lockhart*, 474 U.S. 52, 58 (1985), and *Osborne* v. *Commonwealth*, 378 Mass. 104, 108-113 (1979), for the proposition that the right to effective assistance "plainly includes counsel's effective assistance in connection with the defendant's decision whether to accept *or reject* a plea bargain offer" (emphasis added). *Ante* at 14. Both cases concerned claims of ineffective assistance in connection with the defendant's acceptance of a plea bargain.

*Hill* and *Strickland* in this context are, for the most part, addressing allegations of ineffectiveness of counsel very different from the type of claim before us today. Specifically, many of the cases cited concern allegations that defense counsel failed to inform the defendant that the prosecution had made a plea offer, thereby depriving the defendant of the opportunity to consider it at all.[3] Others concern defense counsel's equally obvious error in miscalculating the defendant's sentencing exposure, either by failing to realize that the charges carried some minimum mandatory sentence, by failing to make a correct calculation under applicable sentencing guidelines, or by misreading the maximum sentence for the charge.[4] These types of errors are so blatant, and so fundamental, that they would readily meet the first prong of the ineffective assistance analysis — an attorney is obligated to communicate any offer made to the defendant, and an attorney is expected to know the sentences the defendant faces. Where the difference between the minimum mandatory or minimum guidelines sentence and the reduced sentence offered in the plea deal is sufficiently large, and the evidence against the defendant is known to be very strong, a defendant may also be able to meet the second prong of an ineffective assistance of counsel claim by demonstrating that, but for the attorney's

[3]See *Pham* v. *United States*, 317 F.3d 178, 181, 183 (2d Cir. 2003); *United States* v. *Blaylock*, 20 F.3d 1458, 1461, 1465 (9th Cir. 1994); *United States ex rel. Caruso* v. *Zelinsky*, 689 F.2d 435, 437 (3d Cir. 1982); *Rasmussen* v. *State*, 280 Ark. 472, 473-475 (1983); *Cottle* v. *State*, 733 So. 2d 963, 964-965 (Fla. 1999); *Lloyd* v. *State*, 258 Ga. 645, 646 (1988); *Lyles* v. *State*, 178 Ind. App. 398, 400 (1978); *State* v. *Simmons*, 65 N.C. App. 294, 298-299 (1983); *Hanzelka* v. *State*, 682 S.W.2d 385, 386 (Tex. Ct. App. 1984); *State* v. *James*, 48 Wash. App. 353, 358, 361 (1987); *Becton* v. *Hun*, 205 W. Va. 139, 142-143 (1999). See also *Cullen* v. *United States*, 194 F.3d 401, 402 (2d Cir. 1999) (failed to inform defendant of terms of offer); *Boria* v. *Keane*, 99 F.3d 492, 495, 497-498 (2d Cir. 1996), cert. denied, 521 U.S. 1118 (1997) (failure to give defendant any advice on extremely favorable plea offer).

[4]See *United States* v. *Rashad*, 331 F.3d 908, 909 (D.C. Cir. 2003); *Magana* v. *Hofbauer*, 263 F.3d 542, 545 (6th Cir. 2001); *Cullen* v. *United States*, 194 F.3d 401, 402-403 (2d Cir. 1999); *Paters* v. *United States*, 159 F.3d 1043, 1044 (7th Cir. 1998); *United States* v. *Gordon*, 156 F.3d 376, 377, 380 (2d Cir. 1998); *United States* v. *Day*, 969 F.2d 39, 42-43 (3d Cir. 1992); *In re Alvernaz*, 2 Cal. 4th 924, 930-931 (1992); *People* v. *Curry*, 178 Ill. 2d 509, 512, 516 (1997); *Williams* v. *State*, 326 Md. 367, 371-372 (1992); *State* v. *Taccetta*, 351 N.J. Super. 196, 199 (2002). See also *Coulter* v. *Herring*, 60 F.3d 1499, 1502-1503 (11th Cir. 1995).

failure to convey the offer or the erroneous advice about sentencing exposure, the defendant would likely have accepted the plea offer. See *Magana* v. *Hofbauer*, 263 F.3d 542, 551-552 (6th Cir. 2001); *People* v. *Curry*, 178 Ill. 2d 509, 532-533 (1997). See also *Boria* v. *Keane*, 99 F.3d 492, 497 (2d Cir. 1996), cert. denied, 521 U.S. 1118 (1997) (acquittal "almost impossible"); *United States* v. *Day*, 969 F.2d 39, 44 (3d Cir. 1992) (likelihood of conviction "overwhelming"). In such drastic circumstances, it is understandably tempting to overlook the fact that the defendant has been found guilty at a fair trial, and to attempt a turning back of the clock so that the defendant can avoid the results of that trial. It is, in my view, an erroneous application of constitutional principles, one that elevates the buzzwords of "ineffective assistance of counsel" over the concepts that underlie the right to counsel, but it is at least an understandable response to what are admittedly gross errors on the part of counsel.

Rarely do these cases address the kind of claim made here, i.e., the claim that some component of the attorney's analysis of the likelihood of acquittal at trial was defective, which allegedly caused the defendant to overestimate his chances of acquittal and therefore to underestimate the value of the plea offer being made. The soundness of an attorney's analysis concerning the likely outcome of trial and sentencing — an analysis involving "layers of judgment and a highly uncertain element of prognostication," *ante* at 17 — is extremely difficult to measure, and the perfection of hindsight must not be allowed to influence that measurement. Not surprisingly, claims of ineffective assistance predicated on an attorney's erroneous predictions concerning the defendant's chances at trial have rarely been successful.[5] See *In re Alvernaz*, 2 Cal. 4th 924, 937 (1992) (distinguishing claim of failure to convey offer or to inform defendant of sentencing exposure from ineffective assistance claim predicated on attorney's "misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the

[5]See, e.g., *Moreland* v. *Scott*, 175 F.3d 347, 349-350 (5th Cir.), cert. denied sub nom. *Moreland* v. *Johnson*, 528 U.S. 937 (1999); *Gonzales* v. *State*, 691 So. 2d 602, 603 (Fla. Dist. Ct. App. 1997); *Commonwealth* v. *Boyd*, 547 Pa. 111, 117 (1997); *In re Plante*, 171 Vt. 310, 313-315 (2000).

sentence a defendant is likely to receive upon conviction"). But see *Larson* v. *State*, 104 Nev. 691 (1988) (ineffective assistance found where counsel encouraged defendant to reject plea offer because of counsel's desire to obtain notoriety and business opportunities by trying case with novel defense); *State* v. *Lentowski*, 212 Wis. 2d 849, 851-852 (1997) (ineffectiveness established where defendant rejected plea offer due to counsel's erroneous advice that consent and mistake of age were viable defenses to charges of sexual exploitation of child).

Even in the cases that raise more objectively determinable claims (failure to communicate the plea offer or miscalculation of sentence), many have still foundered on the second prong of an ineffectiveness claim, as it is very difficult to establish, other than by purely self-serving statements, that the defendant would have accepted the plea offer. Many courts either rule against the defendant on this prong,[6] or at most remand the case for an evidentiary hearing on this very troublesome point.[7] Because of the court's conclusion that this defendant's claim did not satisfy the first prong, the problems of proof with respect to the second prong are not addressed in today's opinion. Those problems are, however, daunting in all but truly exceptional cases.

Those few and exceptional cases that have found both prongs of ineffective assistance in connection with a defendant's rejection of a plea offer have then had to confront the most problematic aspect of such a claim: the remedy. Where ineffective assistance has caused a defendant to waive his rights and plead guilty, the remedy is simple — allow the defendant to retract the waiver and guilty plea and give him the trial to which he is constitutionally entitled. Where ineffective assistance in preparation for or at trial has resulted in a trial that

---

[6]See *United States* v. *Pena*, 233 F.2d 170, 175 (2d Cir. 2000); *Engelen* v. *United States*, 68 F.3d 238, 241 (8th Cir. 1995); *Coulter* v. *Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995); *Toro* v. *Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991), cert. denied, 505 U.S. 1223 (1992); *Rasmussen* v. *State*, 280 Ark. 472, 473-474 (1983); *In re Alvernaz*, 2 Cal. 4th 924, 945-946 (1992); *Lloyd* v. *State*, 258 Ga. 645, 648-649 (1988).

[7]See *United States* v. *Rashad*, 331 F.3d 908, 912 (D.C. Cir. 2003); *Pham* v. *United States*, 317 F.3d 178, 182-185 (2d Cir. 2003); *Cullen*, v. *United States*, 194 F.3d 401, 407-408 (2d Cir. 1999); *Paters* v. *United States*, 159 F.3d 1043, 1048-1049 (7th Cir. 1998); *United States* v. *Blaylock*, 20 F.3d 1458, 1468, 1469 (9th Cir. 1994); *United States* v. *Day*, 969 F.2d 39, 45-47 (3d Cir. 1992).

is less than fair, the remedy is again straightforward — grant the defendant a new trial so that he may have the fair trial the Constitution requires. However, when the allegedly deficient performance of counsel has caused the defendant to lose an opportunity to plead guilty and thereby obtain the prosecution's recommendation for some lesser sentence, the difficulties of attempting, after trial and conviction, to restore that same opportunity are virtually insurmountable. The observation that a fair trial does not serve to ameliorate the harm done to a defendant who has lost such an opportunity (*ante* at 15 & n.5) is simply another way of saying that nothing can be done to ameliorate that harm. One cannot recreate the balance of risks and incentives on both sides that existed prior to trial, and the attempts to do so raise their own serious constitutional problems.

Some courts have, either as the remedy ordered in the case or in dictum, opined that the proper remedy is to require the prosecution to tender the same offer to the defendant, despite the fact that he has since been convicted at a fair trial.[8] Of course, requiring the prosecution to dismiss a valid charge (as is often necessary to make the lower sentence lawful, and would be necessary in the present case) runs afoul of the doctrine of separation of powers.[9] Where a defendant has been lawfully indicted, and there is no prosecutorial misconduct or infirmity in the evidence, courts do not have the power to order charges dismissed. See *Commonwealth* v. *Cheney*, 440 Mass. 568, 574-575 & n.12 (2003), and cases cited. And even where the

---

[8]See, e.g., *United States* v. *Blaylock*, 20 F.3d 1458, 1468-1469 (9th Cir. 1994); *Williams* v. *State*, 326 Md. 367, 382-383 (1992); *Becton* v. *Hun*, 205 W. Va. 139, 145 (1999). See also *Magana* v. *Hofbauer*, 263 F.3d 542, 553 (6th Cir. 2001) (prosecution can make offer in excess of earlier offer but only if it can overcome presumption that higher offer is vindictive); *Boria* v. *Keane*, 99 F.3d 492, 499 (2d Cir. 1996) (where defendant had already served time in excess of rejected plea offer, sentence reduced to time served).

[9]If the plea offer did not involve any dismissal or reduction of charges, but only the prosecutor's agreement to make a particular sentencing recommendation, the lost opportunity to plead guilty is of little or no significance. A judge who has imposed a sentence that the judge believes is commensurate with the offense proved at trial — be it higher or lower than the prosecutor's recommendation — cannot revise that sentence based on speculation whether a different recommendation from the prosecutor might have yielded a different sentence. Nor, after conviction at trial, can a defendant's ostensible acceptance of responsibility carry the same force as it would prior to trial.

prosecutor has reached an agreement with a defendant, the prosecutor may change position and withdraw the offer at any time prior to the defendant's actual change of plea in reliance on the offer — courts do not order prosecutors to put the same offer back on the table or enforce an offer that has been withdrawn. See *United States* v. *Papaleo*, 853 F.2d 16, 18-20 (1st Cir. 1988), and cases cited. If the prosecutor can withdraw an offer even after it has been accepted by the defendant, it is hard to understand why the prosecutor cannot withdraw an offer that has not been accepted. Having tried the defendant, the prosecutor is surely entitled to withdraw whatever offers were made prior to trial.

There is no basis for ordering the prosecutor to revive the withdrawn offer as a remedy for defense counsel's deficient advice concerning the original plea offer. Where a defendant has rejected the prosecutor's plea offer, there has not been any prosecutorial misconduct or unfair benefit to the prosecution that would justify the extraordinary remedy of court-ordered reduction or dismissal of charges. To the contrary, inherent in the prosecution's plea offer is the expression of the prosecutor's preference that the case be resolved on those terms rather than by trial. Whatever potential costs, risks, and consequences caused the prosecution to tender its plea offer in the first place, the defendant's rejection of that offer has caused the prosecution to incur the very costs, risks, and consequences that the prosecution hoped to avoid. Having incurred them all, and having obtained a fair conviction, the prosecution cannot "unincur" them and be placed back in the position it was in at the time the plea deal was offered. Requiring the Commonwealth, after a fair conviction, to retender the same plea offer that was made for the very purpose of avoiding the costs, risks, and consequences associated with trial violates both the separation of powers and simple fairness.

Recognizing the impropriety of requiring prosecutors to retender the previously rejected plea offer, some courts instead grant the defendant a new trial.[10] Given that one fair trial does not remedy the ineffective assistance that caused the defendant

---

[10]See *United States* v. *Gordon*, 156 F.3d 376, 381-382 (2d Cir. 1998); *People* v. *Curry*, 178 Ill. 2d 509, 536-537 (1997); *Larson* v. *State*, 104 Nev.

to reject a prior plea offer (see *ante* at 15 & n.5), the granting of another trial will not remedy that ineffectiveness either. No matter how many fair trials the defendant is given, those trials will not restore to the defendant the lost opportunity to plead guilty to lesser charges with lesser sentences. See *State* v. *Kraus*, 397 N.W.2d 671, 674 (Iowa 1986) ("it is difficult to see how a new trial restores the lost chance of the bargain").

In reality, of course, the "remedy" of a new trial is granted as a not-so-subtle means of pressuring the prosecution into putting the prior deal back on the table. See *In re Alvernaz*, 2 Cal. 4th 924, 944 (1992) (prosecutor should be given thirty days to elect whether to resubmit prior offer or retry defendant); *Lyles* v. *State*, 178 Ind. App. 398, 402 (1978) (if prosecutor withdraws prior offer, defendant to be granted new trial). However, we have long held that judges should not be participants in the plea bargaining process. See *Commonwealth* v. *Gordon*, 410 Mass. 498, 501 n.3 (1991). See also *Commonwealth* v. *Kelleher*, 28 Mass. App. Ct. 915, 915-916 (1989); *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. 746, 750 (1989); *Commonwealth* v. *Damiano*, 14 Mass. App. Ct. 615, 619 n.7 (1982). Judicial pressure to force the prosecutor to drop valid charges is every bit as much a violation of separation of powers as is an outright judicial order that valid charges be dropped. And, of course, allowing a new trial in order to create that pressure is a very blunt instrument, ill suited to the accomplishment of the precise task at hand. If the witnesses and evidence are still available, or perhaps have even become stronger (for example, by way of improved forensic testing), the prosecutor likely will not reoffer the plea bargain, and everyone will simply endure an utterly pointless retrial. If, however, witnesses and evidence are no longer available, there is a strong likelihood that a subsequent trial will result in an outright acquittal of the defendant, a "remedy" out of all proportion to the damage allegedly done by the ineffective assistance in connection with the earlier plea offer. Or, if the prosecutor does succumb to this unseemly and unconstitu-

691, 694 (1988); *State* v. *Taccetta*, 351 N.J. Super. 196, 201 (2002); *State* v. *Simmons*, 65 N.C. App. 294, 301 (1983); *Hanzelka* v. *State*, 682 S.W.2d 385, 387 (Tex. Ct. App. 1984); *State* v. *Lentowski*, 212 Wis. 2d 849, 857-858 (1997).

tional pressure and retenders the same plea offer, what guarantee is there that the defendant, now sensing a chance of acquittal, will accept the retendered plea offer? Can the grant of a new trial be rescinded if the defendant rejects the retendered plea offer, or can the defendant otherwise be forced to accept the offer (and then be put through a charade of a change of plea colloquy)?[11]

Depending on the specific circumstances, other obstacles to a remedy abound. Here, for example, the plea offer made by the Commonwealth involved the dismissal of the armed home invasion indictment in exchange for the defendant's pleading guilty to all seven of the remaining charges. But, at trial, the defendant was acquitted of two of those charges (two indictments charging assault by means of a dangerous weapon). How, consistent with principles of double jeopardy and due process, could the defendant now be retried on or plead guilty to charges of which he was acquitted? Acquittals, or convictions on lesser included offenses, can make it legally impossible to resurrect and impose the previously rejected plea agreement — must the Commonwealth then offer (or be pressured into offering) a plea deal that is even more lenient than the one the defendant previously declined? Or, going in the other direction, what if the defendant has, since the time of the original plea offer, been charged with (or convicted of) additional offenses that make the lenient terms of the earlier plea offer legally impossible or pragmatically meaningless? What if the convictions at trial (subsequent to the allegedly defective handling of the plea negotiations) have later formed the predicate for second and subsequent offense charges and convictions — must the Commonwealth forgo those later charges and convictions as well?

Grappling with the problems of remedy for ineffective assistance in the rejection of plea offers calls to mind all of the common adages to the effect that one cannot put the toothpaste back in the tube or unscramble a scrambled egg. Like today's

---

[11]For a change of plea taken in these circumstances, many of the standard plea colloquy questions would border on the absurd (e.g., "Do you understand that you are waiving your right to a trial?" "As I understand it, you are pleading guilty because you are guilty of these offenses and for no other reason, is that correct?").

decision (*ante* at 19 n.9), most of the cases addressing such ineffective assistance claims have not had to confront the issue of remedy at all, or have glossed over its complexities in dictum, see *Lloyd* v. *State*, 258 Ga. 645, 648 n.6 (1988), or have proceeded on the confident assumption that creative trial judges will come up with some way of putting Humpty together again. See *United States* v. *Day*, 969 F.2d 39, 47 (3d Cir. 1992) ("district court would have considerable discretion in fashioning a remedy appropriate under the circumstances today"). I can understand that, in egregious cases of total failure to communicate the plea offer or gross miscalculation of the defendant's sentencing exposure, it is tempting to try to fashion some remedy, however contorted, for the perceived unfairness in that lost opportunity to plead to a lesser charge. It is another thing to suggest that trial judges should engage in such contortions when the claim is premised only on the theory that counsel gave the defendant an overly optimistic view of his chances of acquittal.

For good reason, judges have been advised to stay out of the plea bargaining process, leaving it to the parties to formulate, analyze, and communicate their own offers, counteroffers, acceptances, or rejections. Judges do not, prior to the start of trial, undertake any inquiry or review of whether the defendant's plea of *not* guilty is well informed or well advised. When, despite a favorable plea offer from the prosecution, a defendant maintains his or her original plea of not guilty, the judge's job is to see to it that that defendant is accorded a fair trial, replete with all of the rights and protections (including the right to the effective assistance of counsel) that a fair trial entails. The prospect of judges, long after having accorded the defendant that fair trial, policing the previous unsuccessful plea negotiation through the vehicle of an ineffective assistance of counsel claim, should give us pause.