NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-932

COMMONWEALTH

vs.

DAVID FLAVELL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court in 2010, the defendant, David Flavell, was convicted of assault with intent to rape, second and subsequent offense, in violation of G. L. c. 265, § 24, as well as three other crimes arising from the same incident.  The defendant's direct appeal from these convictions was dismissed with prejudice at the defendant's request.  In 2021, the defendant filed a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), claiming, among other things, that his counsel was ineffective (1) because counsel went forward and pursued a lack of criminal responsibility defense without the support of an expert witness, and (2) because counsel failed to properly

advise the defendant regarding the viability (or lack thereof) of that defense, which (allegedly) resulted in the defendant rejecting a plea offer he would have accepted if properly advised.  The motion for a new trial was denied without an evidentiary hearing, and the defendant appeals.  We affirm.

Background.  1.  Incident and evidence at trial.  The present matter stems from an incident at Massachusetts General Hospital (MGH) that occurred on October 22, 2009.  The Commonwealth's evidence included numerous witnesses, including the victim and expert witnesses, as well as physical evidence, surveillance video, and photographs.

The evidence showed that at around 3 P.M. that day, the defendant attacked the victim, an employee of MGH, inside a woman's restroom.  The victim so testified, identifying the defendant in court.  Other witnesses had seen the defendant outside the restroom in the days before the attack, and still other witnesses saw the defendant shortly before the attack pretending to drink from a water fountain near the restroom.  Shortly before the attack, the defendant calmly told two women that the women's restroom was out of order.  A handwritten sign taped onto the restroom door read:  "Out of order.  Do not use."

The victim went to use the restroom at around 3 P.M.  The victim saw other women coming out of the restroom, and entered it.  She testified that she could not see the whole "out of

2

order" sign, as the sign was "falling off." When the victim entered the restroom, she was alone.

While the victim was in the bathroom stall, she heard paper rustling and tape being used. When the victim left the bathroom stall and washed her hands, the defendant calmly walked into the bathroom and began to look around. The victim asked the defendant if he realized he was in the women's restroom; the defendant calmly responded, "yes."

The defendant then approached the victim and assaulted her. He threw her back to the floor, and slammed her head against the floor. The victim tried to push the defendant off and yelled for help, but the defendant covered her mouth with his hands. The defendant then choked the victim while he had his knee on her chest. While the defendant kept one hand on the victim's throat, he pulled the front of the victim's pants, ripping off the pants' buttons and undoing the zipper. He told the victim to "[s]hut up and cooperate."

The victim continuously tried to get out the bathroom door, but the defendant stopped her. The last time the victim tried to run out of the bathroom the defendant grabbed her belt loop, but it snapped and the victim was able to escape into the hallway. When the victim escaped, her pants were lower than her hips, and her face was covered in blood.

The defendant exited the bathroom and walked down the hallway at a "normal pace" with blood on his hands. The victim pointed to the defendant, screaming, "He tried to hurt me." A security officer then apprehended the defendant. When the defendant was apprehended, he did not say anything or resist, but stood with a "blank stare" on his face. An officer noticed that the zipper of the defendant's pants was all the way down.

A bystander witnessed many of the above events. She heard loud screams coming from the women's restroom, opened the restroom door and saw the victim trying to pull up her pants, with her hips and buttocks exposed, while the defendant leaned over her. The defendant looked "steady and calm" while the victim, whose face was covered in blood, looked frightened and panicked. The victim pointed to the defendant and told the bystander, "He did it. He tried to hurt me." As the defendant proceeded down the hallway after the attack, the bystander pointed to the defendant.[1]

A handwriting expert testified that in his opinion, the "out of order" sign was handwritten by the defendant. The sign was written on the back of a document titled, "Verification of

---

[1] Surveillance video exhibits captured the victim after she came out of the restroom, the defendant walking down the hallway after the attack, and the bystander pointing toward him after the attack.

4

Homelessness."  The defendant's wallet contained an identification from a homeless shelter as well as pornographic material.  Tape in the defendant's backpack was similar to the tape used to hang up the sign.

2.  <u>Dr. Robert Joss and plea negotiations</u>.  On January 7, 2010, the defendant retained Dr. Robert Joss as an expert for the planned defense of lack of criminal responsibility due to mental disease or defect.  The day before jury empanelment, April 20, 2010, during a motion hearing, defense counsel stated that he intended to call Dr. Joss to testify "to [the defendant's] mind[s]et during the events.  It's going to be basically a <u>McHoul</u> defense here."

That same day, the Commonwealth informed the trial judge that if the defendant were to plead guilty, the Commonwealth would offer a recommended sentence of from nineteen to twenty years, followed by fifteen years of probation.  Defense counsel responded, "We want to go to trial."

The next day, April 21, 2010, the day scheduled for trial, defense counsel relayed to the trial judge, outside the presence of the defendant, that Dr. Joss could not "legitimately come to an opinion as to [the defendant's] state of mind at the time of

5

this incident." Defense counsel stated that he was informed of this that morning.[2]

Defense counsel further requested, "The D.A. has offered 18 to 20 years with 15 years of probation. . . . [The defendant is] asking if the Court would consider a 15-year sentence if he's willing to plea to that[.]" The trial judge responded that he was prepared to give the defendant a sentence of from fifteen to eighteen years. Defense counsel responded, "It won't take long to talk to [the defendant] about it." The judge then took a recess so that defense counsel could speak to the defendant.

The recess lasted one hour or a little more. On returning, defense counsel did not mention a plea bargain, but instead requested a sixty-day continuance so that he could attempt to find another expert witness. The judge denied the request. Defense counsel then relayed, in the presence of the defendant, that defense counsel was still going forward with a defense of lack of criminal responsibility and was still planning on

---

[2] As detailed in defense counsel's and Dr. Joss's affidavits, infra, Dr. Joss interviewed the defendant for the first time on January 23, 2010. On April 15, 2010, Dr. Joss discussed difficulties with a lack of criminal responsibility defense with defense counsel. Dr. Joss interviewed the defendant for a second time on April 18, 2010. On April 20, 2010, Dr. Joss informed defense counsel that he could not come to a conclusion about the defendant's lack of criminal responsibility. On April 21, 2010, defense counsel asked Dr. Joss to reconsider his findings; Dr. Joss responded that it would be detrimental to the defense for him to testify.

calling Dr. Joss to testify about the mental history of the defendant, but not to the defendant's mental state during the incident.

The trial began that day. In his opening statement, defense counsel stated that the defendant "is not a well man," encouraged the jury "to listen closely [and] make your own judgments as to the state of mind that [the defendant] was in at that time," and stated that the case was "an insanity defense." In his opening, defense counsel did not state that the defense would present any particular expert witnesses, including Dr. Joss, or evidence.

Defense counsel then presented a defense through cross-examination and argument. During the course of the trial, defense counsel consulted with two additional experts, but "[g]iven what their testimony [was] projected to be" defense counsel did not think that they were "going to help my case." Defense counsel subsequently decided to not present any witnesses.

Defense counsel was precluded from arguing lack of criminal responsibility at closing, based on the state of the evidence, and the judge also declined to instruct the jury on the same. In his closing, defense counsel argued that the defendant was guilty of assault and battery, but not assault with intent to rape or assault and battery with a dangerous weapon. Defense

counsel also urged the jury to consider the defendant's mental condition.

Following trial, the jury convicted the defendant on all counts. The trial judge sentenced the defendant to twenty-five to thirty years on the charge of assault with intent to rape, second and subsequent, and ten years of probation from and after on the remaining charges.

3. Motion for a new trial. The defendant filed a motion for a new trial over eleven years later, in October of 2021. The defendant argued that trial counsel rendered ineffective assistance in two areas. First, he argued that trial counsel was ineffective in "promising the jury an 'insanity defense' based on the hope that one would materialize." Second, he argued that trial counsel's "ineffective advice regarding the viability of a criminal responsibility defense," particularly relying on Dr. Joss, caused the defendant to reject the plea offer. The defendant also argued that the trial judge abused his discretion in denying the defendant's motion for a continuance.

The motion for a new trial was supported by affidavits from the defendant, defense counsel, and Dr. Joss. The defendant's affidavit stated that the defendant was aware that in the event of a plea, the prosecutor had offered to recommend a sentence of from nineteen to twenty years, but that the defendant "did not

8

know" that the judge had "mentioned the possibility of imposing a lower sentence." The defendant's affidavit also stated that he "expected that [defense counsel] had evidence to support my [lack of criminal responsibility] defense and would call Dr. Joss or the other doctors" to present that defense, and that the defendant "did not know that [defense counsel] was unprepared to go forward" with such a defense. The defendant's affidavit did not address any specific conversations with defense counsel, and in particular, did not address what he and defense counsel discussed during the recess that defense counsel requested shortly before trial began.

Defense counsel's affidavit also did not address any specific conversations between him and the defendant, and in particular, did not address what counsel discussed with the defendant during the recess that counsel requested for the purpose of discussing the judge's fifteen to eighteen year plea offer. Defense counsel's affidavit did state, however, that the defendant "did not accept any offer of the judge," and "was not interested in any offers put forth by the Commonwealth." Defense counsel further confirmed that counsel knew, as of the day of trial, that Dr. Joss had indicated that his opinions would not help the defendant's case. Defense counsel's affidavit did not address whether or not he so advised the defendant.

9

The motion judge, who was different than the trial judge, denied the motion for a new trial without an evidentiary hearing, concluding that the motion failed to raise a substantial issue. The motion judge did not credit the defendant's statements in his affidavit that he did not know that the trial judge offered a lower sentence, and that, if he had known that defense counsel would "fail to present an insanity defense at trial," the defendant would have accepted the Commonwealth's earlier plea offer. This appeal followed.

Discussion. On appeal, the defendant contends that the motion judge abused her discretion in denying his motion for a new trial without an evidentiary hearing. "We review a judge's denial of a motion for a new trial for a significant error of law or other abuse of discretion" (quotation and citation omitted). Commonwealth v. Alcide, 472 Mass. 150, 158 (2015). "A defendant bears the burden of proof on a motion for a new trial . . . and a judge is entitled to discredit affidavits he or she does not find credible" (citations omitted). Commonwealth v. Marinho, 464 Mass. 115, 123 (2013). The motion judge is not required to conduct an evidentiary hearing on a motion for a new trial unless the defendant raises a "substantial issue." Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001).

10

1.  <u>Ineffective assistance of counsel</u>.  a.  <u>Lack of criminal responsibility defense</u>.  The defendant first argues that he was denied effective assistance of counsel because counsel should not have gone forward with a lack of criminal responsibility defense where he had no expert witness to so testify.  We are not persuaded.  To prevail on a motion for a new trial claiming ineffective assistance of counsel, a defendant must show "serious incompetency of counsel (behavior falling measurably below that which might be expected from an ordinary fallible lawyer) and prejudice."  <u>Commonwealth</u> v. <u>Mahar</u>, 442 Mass. 11, 15 (2004).  To show prejudice, the defendant must show that "counsel's poor performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  <u>Commonwealth</u> v. <u>Millien</u>, 474 Mass. 417, 429-430 (2016), quoting <u>Commonwealth</u> v. <u>Saferian</u>, 366 Mass. 89, 96 (1974).

Here, counsel had very few options available, and made a strategic decision as to the defense to advance.  The case against the defendant was extremely strong, including not only the victim's testimony but multiple corroborating witnesses as well as physical evidence.  Given the facts, a straight not guilty verdict was highly unlikely.  Counsel decided to pursue a lack of criminal responsibility defense and made a reasonable effort to locate an expert witness, but the expert he worked

11

with would not support the defendant's case.  Shortly after counsel learned this, he sought a continuance, which was denied.

Strategic decisions by counsel do not amount to ineffective assistance of counsel unless they are "so manifestly unreasonable as to be unprotected by the labels of 'trial strategy' or 'trial tactics.'"  Commonwealth v. Smith, 459 Mass. 538, 551 (2011), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978).  Here, counsel averred, "I had no experts to offer an expert opinion on [lack of criminal responsibility] but I did believe that [the defendant's] conduct was extreme enough to suggest the insanity defense based on a juror's own life experiences."  Counsel's decisions were not manifestly unreasonable.  See Commonwealth v. Berry, 457 Mass. 602, 612 n.5 (2010) (expert testimony is not required to raise insanity defense); Commonwealth v. Hall, 45 Mass. App. Ct. 146, 152 (1998) (same).  Moreover, and in any event, the defendant did not show prejudice.  He did not provide any evidence that there was any other expert witness who might have provided testimony that would have helped him, or that an alternative strategy had a reasonable chance of a better result.  See Commonwealth v. Velez, 487 Mass. 533, 546 (2021).

b.  Alleged ineffective assistance leading to a failure to plead.  The defendant next argues that he received ineffective advice from defense counsel regarding the viability of an

12

"insanity defense," that he expected expert witnesses, and that had he been properly advised he would have taken the plea offer of fifteen to eighteen years offered by the judge. "It is beyond dispute that a defendant's decision whether to plead guilty or proceed to a trial is a critical stage in a criminal proceeding for which he is constitutionally entitled to the effective assistance of counsel." Mahar, 442 Mass. at 14. To establish prejudice in the plea context, the defendant "must show the outcome of the plea process would have been different with competent advice." Commonwealth v. Camacho, 472 Mass. 587, 604 (2015), quoting Lafler v. Cooper, 566 U.S. 156, 163 (2012). Specifically, "the defendant must demonstrate a reasonable probability that the prosecution would have made an offer, that the defendant would have accepted it, and that the court would have approved it." Marinho, 464 Mass. at 129.[3]

The motion judge rejected this ineffective assistance argument without holding an evidentiary hearing, and we perceive no error. The only support for the defendant's claim that he

---

[3] We note that the ineffective assistance argument based on the plea offer comes to us in an unusual posture, because as to this argument the remedy the defendant seeks is not a new trial, but rather to be granted the ability to plead guilty and receive a particular sentence. Thus, as a remedy for ineffective assistance of counsel, the defendant argued that he "should receive the 15-18-year term offered by the judge." Because we affirm the judge's decision that the defendant has failed to make out an ineffective assistance claim, we do not address the viability of such a theory.

was misadvised is his own affidavit, which is lacking in important detail. The defendant's affidavit did not address the most critical fact -- what was the defendant told, and what was discussed, during the recess that defense counsel requested, after the judge offered a sentence of from fifteen to eighteen years and at a time when defense counsel was clearly focused on the fact that he did not have an expert witness to testify. The motion judge was free to "reject as not credible the defendant's self-serving, conclusory affidavit," Commonwealth v. Grant, 426 Mass. 667, 673 (1998), and did not abuse her discretion in doing so. See Commonwealth v. Rebello, 450 Mass. 118, 130 (2007).

Defense counsel's affidavit did not corroborate the defendant's affidavit on any critical point. Defense counsel did not confirm that he had not told the defendant about the lack of an expert witness, or about the judge's offer. See Commonwealth v. Goodreau, 442 Mass. 341, 354 (2004) ("When weighing the adequacy of the materials submitted in support of a motion for a new trial, the judge may take into account the suspicious failure to provide pertinent information from an expected and available source"). Indeed, defense counsel's affidavit stated that the defendant would not accept any offer of the judge and had not been interested in any plea offers put forth by the Commonwealth -- statements the motion judge could of course credit. Moreover, the factual context in which the

14

discussion at recess occurred certainly suggests that counsel would have advised the defendant of the judge's offer, and of the weakness of the defense.

Accordingly, the defendant did not raise a substantial issue requiring an evidentiary hearing on the issue of ineffective assistance of counsel.  See Mahar, 442 Mass. at 15.

2.  Denial of a continuance.  Finally, the defendant argues that the trial judge abused his discretion when he refused defense counsel's request for a continuance.  That issue should have been raised on direct appeal, but it was not as the defendant's direct appeal was dismissed at the defendant's request.  The issue accordingly should have been treated as waived, although the Commonwealth did not argue such in its opposition to the defendant's motion for a new trial or in its appellee brief.  See Commonwealth v. Camblin, 478 Mass. 469, 480 n.10 (2017); Commonwealth v. Randolph, 438 Mass. 290, 293-295 (2002).

In any event, we would review the denial of a motion for a continuance for an abuse of discretion.  Commonwealth v. Fernandez, 480 Mass. 334, 340 (2018).  Here, even if we were to agree that under the circumstances a continuance would have been warranted, the defendant did not show prejudice from the denial. Primarily, the strength of the Commonwealth's case against the defendant was overwhelming.  Further, the defendant did not

15

provide an affidavit from an alternative expert witness who would have testified on his behalf.  Thus, the defendant did not establish how a continuance would have affected the result of the trial.  Accordingly, the denial of the motion for a new trial on this ground was not an abuse of discretion.

Order denying motion for a new trial affirmed.

By the Court (Ditkoff, Englander & Smyth, JJ.[4]),

Clerk

Entered:  September 23, 2024.

---

[4] The panelists are listed in order of seniority.