IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2025

## RANDALL L. PRUITT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Monroe County**
**No. 24-020    Andrew M. Freiberg, Judge**

_____

**No. E2024-01344-CCA-R3-PC**

_____

Petitioner, Randall L. Pruitt, entered open guilty pleas to three counts of rape, and following a sentencing hearing, the trial court imposed an effective sentence of twenty-eight and one-half years.  This court affirmed Petitioner's sentences on direct appeal. Petitioner then filed a petition for post-conviction relief in which he claimed ineffective assistance of counsel, and the post-conviction court denied the petition after a hearing.  On appeal, Petitioner asserts that trial counsel was ineffective in advising him of his potential sentences by pleading guilty without a sentencing agreement with the State.  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Donald Shahan, District Public Defender, for the appellant, Randall L. Pruitt.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Shari Tayloe, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts and Procedural History

A.  Guilty Pleas

The convictions underlying this case arise from Petitioner's prolonged sexual abuse of the victim, his then-fourteen-year-old adopted daughter, the facts of which are

summarized in this court's opinion from Petitioner's direct appeal. *State v. Pruitt*, No. E2021-01118-CCA-R3-CD, 2022 WL 4005810, at *1 (Tenn. Crim. App. Sept. 2, 2022), *perm. app. denied* (Tenn. Jan. 11, 2023). In June 2019, the Monroe County Grand Jury indicted Petitioner on a superseding indictment, charging Petitioner with three counts of rape of the victim. *Id.* On June 21, 2019, the day before his jury trial was scheduled, Petitioner entered open guilty pleas to the three counts of rape subject to a sentencing hearing. *Id.* In accordance with Petitioner's guilty pleas, the trial court would decide the duration of the sentences and whether they should be served consecutively. *Id.*

At the August 27, 2021 sentencing hearing, the trial court imposed nine and one-half years' imprisonment for each conviction. *Id.* at *5. In considering whether the sentences should run concurrently or consecutively, the trial court found Petitioner was convicted of multiple offenses involving the prolonged sexual abuse of the victim, resulting in "residual, extensive, traumatic, mental damage." *See* Tenn. Code Ann. § 40-35-115(b)(2), (5). Accordingly, the trial court ordered the sentences to run consecutively for an effective sentence of twenty-eight-and-one-half years at a service rate of 100 percent. *Pruitt*, 2022 WL 4005810, at *5. The trial court found that it was "an extremely aggravated case" and that Petitioner's "level of malady and prolonged and sustained intent to violate his adoptive daughter and to violate the law [was] beyond the pale of any type of standard of decency, of humanity." *Id.* at *3. The trial court observed that the rapes were "about as horrible as [it had] ever seen or witnessed in seventeen years of criminal law practice." *Id.* at *4.

On direct appeal, Petitioner argued that the trial court erred by imposing consecutive service of his sentences. *Id.* at *5. Concluding that the trial court did not abuse its discretion by imposing consecutive sentences, this court affirmed the judgments of the trial court. *Id.* at *6.

Thereafter, Petitioner filed a timely petition for post-conviction relief, alleging ineffective assistance of counsel and asserting that trial counsel ("Counsel") misadvised him regarding his sentence exposure if he entered open pleas to the charges rather than accept the State's offer of twenty-four years. The post-conviction court appointed post-conviction counsel to represent the Petitioner. On August 23, 2024, the post-conviction court conducted a hearing on Petitioner's claims.

## B. Post-Conviction Hearing

At the post-conviction hearing, Counsel was the sole witness to testify. Counsel testified that he had been a licensed attorney in Tennessee for thirty-six years at the time of the hearing and that criminal law constituted approximately forty percent of his general practice. He stated that he spent five years as a prosecutor and prosecuted child sex abuse

matters during that time. Counsel acknowledged that he was retained by Petitioner after the victim ran away from home and before the filing of criminal charges against Petitioner. During his representation of Petitioner, Counsel said he thoroughly investigated the facts of the case.

Counsel stated that his investigation included speaking with law enforcement and Department of Child Services ("DCS") officials several times. From the start, Counsel adopted a cooperative posture with law enforcement because "he was going to get more information from them" through cooperation. He stated, "in this case . . . I was going to be better off talking to them and getting out of them what I could, and it actually worked out well . . . quite frankly, I don't know that there was anything about the case I didn't know." Through the gathering of evidence, Counsel discussed with Petitioner the strengths and weaknesses of pleading or proceeding to trial.

Counsel testified that given the strength of the evidence, he advised Petitioner that proceeding to a jury trial "was definitely going to go badly." He explained to Petitioner that child victims "are extremely sympathetic" particularly when they are articulate—as was the case here. Further, given a video that the victim recorded of Petitioner's abuse, a jury "would just go ahead and find him guilty" and "wouldn't even bother . . . to take a smoke break."

Counsel stated that he engaged in plea negotiations with the State. At the post-conviction hearing, he identified a memorandum that outlined the State's formal offer—a twenty-four-year sentence to be served at 100 percent in exchange for a guilty plea on all counts. Counsel explained this offer to Petitioner; however, he noted that Petitioner was not interested in plea bargains with sentences of twenty-four years or more. Counsel explained to Petitioner the maximum sentence that could be imposed was thirty-six years. He denied telling Petitioner that the maximum sentence would be twenty-four years; however, he agreed that he "probably" told Petitioner that the sentence imposed by the trial court would not be more than twenty-four years.

Counsel testified that he explained to Petitioner the advantage of the trial court's viewing him as "accepting responsibility" and "not trying to put the victim through a trial." In Counsel's view, pleading guilty would bring Petitioner to find potential favor with the trial court. He noted that in his previous experiences with the court, the court was "very aware" of whether a defendant accepts responsibility and seeks to resolve a case "in a manner that is beneficial to everyone." Counsel stated that he was hoping the court would order at least one sentence to be served concurrently for an effective sentence of eighteen to twenty years.

Counsel acknowledged that Petitioner's sentence was greater than Counsel had hoped. He stated that, in hindsight, his evaluation of what could be accomplished by pleading guilty may have been wrong. Nonetheless, Counsel reiterated that given the strength of the State's proof and his hesitation with having Petitioner testify, Counsel would not have recommended taking the case to trial.

## C. Post-Conviction Court's Findings

Following the evidentiary hearing, the post-conviction court denied the petition in a written order. The court found that Counsel's testimony was "inherently logical, reasonable, and corroborated by the facts and evidence in this case." To that point, the court accredited Counsel's testimony "in full, resolving all factual disputes" in Counsel's favor. The court observed that Counsel had practiced law for thirty-six years and found Counsel had "vast experience serving as counsel in child sex abuse cases."

The post-conviction court concluded that Counsel's representation of Petitioner "was not deficient in any regard." The court noted that Counsel met with Petitioner prior to charges being filed and "attempted to curry favor with both law enforcement officers and [the State] to obtain the most advantageous plea settlement possible." The court acknowledged that, based on Counsel's experience with the trial court, he understood that accepting responsibility was "normally advantageous to clients facing the proverbial 'no win' situation." Despite Counsel's efforts, however, the "evidence of [Petitioner's] guilt was extremely strong." The post-conviction court found that Counsel properly conveyed the State's plea offer to Petitioner, but Petitioner rejected it. Rather, "it was Petitioner's decision to roll the proverbial dice . . . in hopes of receiving less than a twenty-four-year prison term." On the day prior to the start of his trial, "[j]udicial sentencing afforded Petitioner a chance of less punishment, which Petitioner found to be his best option."

The post-conviction court recognized that Counsel's advice to Petitioner that a twenty-four-year-sentence would likely be "near the top of the predicted judicially imposed sentence" was not accurate. However, despite Petitioner's receiving a harsher sentence than estimated, "such does not establish the ineffectiveness of counsel as measured by constitutional standards." The court stated that "[t]he more relevant question is whether the employed strategy and tactics were reasonable based upon adequate representation." The court concluded that Counsel was "not deficient in any regard" and was "adequately informed and prepared and did pursue a means of defense on behalf of Petitioner to the best of his abilities and beyond that expected of a reasonably competent and constitutionally effective criminal defense attorney." The court further concluded that because Counsel "was not deficient in his representation of Petitioner in any regard, there can be no prejudice to Petitioner."

- 4 -

## II.  Analysis

### A.  Post-Conviction Standard of Review

To obtain post-conviction relief, a petitioner must establish his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  Tenn. Code Ann. § 40-30-103.  A petitioner bears the burden of proving the factual allegations contained in the petition by clear and convincing evidence.  *Id.* § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 296 (Tenn. 2009).  "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence."  *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses.  *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)).  Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact.  *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)).  On appeal, a post-conviction court's factual findings will not be disturbed unless the evidence contained in the record preponderates against the findings.  *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).  On the other hand, conclusions of law are given no presumption of correctness on appeal.  *Dellinger*, 279 S.W.3d at 293; *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).  We review "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness."  *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (first *citing Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); and then citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)).

### B.  Ineffective Assistance of Counsel

Both the United States Constitution and the Constitution of the State of Tennessee guarantee criminal defendants the right to effective assistance of counsel.  U.S. Const. amend VI; Tenn. Const. art. I, § 9.  Under the Sixth Amendment to the United States Constitution, when a petitioner raises an ineffective assistance of counsel claim, the burden is on the petitioner to show both (1) counsel's performance was deficient and (2) the deficiency was prejudicial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockart v. Fretwell*, 506 U.S. 364, 368-72 (1993).  The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution.  *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).  To prevail on such a claim, a petitioner

must prove both prongs of the *Strickland* test, and failure to prove either is "a sufficient basis to deny relief on the claim." *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "[A] court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

To prove that counsel's performance was deficient, a petitioner must establish that his attorney's conduct fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As our supreme court has held:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Finch v. State*, 226 S.W.3d 307, 315-16 (Tenn. 2007) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 934-35 (Tenn. 1975)). A reviewing "court may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation." *Alley v. State*, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). A reviewing court also cannot criticize a sound, but unsuccessful, tactical decision made during the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

In the context of plea negotiations, trial counsel has the duty to communicate and explain any plea offers made by the prosecution. *Nesbit v. State*, 452 S.W.3d 779, 800-01 (Tenn. 2014) (citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)). Trial counsel must afford a defendant "with competent and fully informed advice, including an analysis of the risks that the [defendant] would face in proceeding to trial." *Id*. at 800 (quoting *Burt v. Titlow*, 571 U.S. 12, 25 (2013) (Sotomayor, J., concurring)). "An evaluation of counsel's performance in advising a defendant whether to accept or reject a plea offer 'depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.'" *Smith v. State*, No. M2017-00321-CCA-R3-PC, 2018 WL 3803081, at *4 (Tenn. Crim. App. Aug. 9, 2018) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). As concluded by other appellate courts, "a defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving

the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel." *Com. v. Mahar*, 809 N.E.2d 989, 994 (Mass. 2004) (quoting *In re Alvernaz*, 830 P.2d 747, 755 (Cal. 1992)) (internal quotation marks omitted).

Where a petitioner alleges that a trial counsel's deficient performance causes a plea offer to lapse or be rejected, the petitioner, in order to show prejudice, must demonstrate a reasonable probability that, but for counsel's deficient performance, "(1) the [petitioner] would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed." *Nesbit*, 452 S.W.3d at 800-01 (citing *Lafler*, 566 U.S. at 164).

Petitioner contends that Counsel was deficient for misadvising Petitioner that the sentence imposed by the trial court would be comparable to the plea offer of twenty-four years. Petitioner argues that Counsel's advice "equates to being told that the [State's] offer has little to any benefit or value to [Petitioner] and that there is minimal to no risk in rejecting the offer." Hence, he asserts that if Counsel had not given such an analysis, Petitioner "would have looked at the settlement offer with a different state of mind." The State responds that Petitioner has failed to show deficient performance or that Petitioner would have accepted the offer but for Counsel's inaccurate assessment. We agree with the State.

First, we agree with the post-conviction court that Petitioner failed to show that Counsel was deficient in his inaccurate estimate of the sentence that the trial court would impose. Counsel was experienced in matters of criminal law, had handled child sex abuse cases previously, and was familiar with the trial court's exercise of its discretion in sentencing defendants who accept responsibility through guilty pleas. Counsel was retained before the filing of criminal charges and actively investigated the law and facts of the case from the start of his representation. To that end, Counsel spoke with law enforcement and DCS officials several times during the case, causing him to reflect, "I don't know that there was anything about the case I didn't know." The post-conviction court noted all of these in reaching its conclusion, and we agree that Counsel's projection that the trial court's sentence would be similar to the State's offer was based upon Counsel's well-informed opinion. *See Gray v. State*, No. W2018-01262-CCA-R3-PC, 2019 WL 2068506, at *10 (Tenn. Crim. App. May 8, 2019) (concluding that trial counsel's advice regarding the State's offer was the result of a thorough investigation, which extended beyond the materials provided in the State's discovery and continued for at least a year). That Petitioner received a greater sentence than Counsel's prediction does not establish deficient performance. As the post-conviction court observed, "it was Petitioner's decision to roll the proverbial dice" through his open guilty pleas in hopes of obtaining a

more favorable punishment than the plea offer.  Hence, Petitioner has failed to show that Counsel's performance was deficient.

Second, we agree with the post-conviction court that Petitioner failed to show that Counsel's advice caused Petitioner to reject the State's offer.  Petitioner argues that had Counsel not provided an inaccurate estimate of his sentence, he "would have looked at the settlement offer with a different state of mind."  However, Petitioner's self-serving assertion does not establish that he would have accepted the plea.  According to Counsel's accredited account, Petitioner specifically rejected the State's offer and expressed that he was not interested in any plea involving more than twenty-four years.  There was no other proof offered at the post-conviction hearing that Petitioner would have accepted the State's twenty-four-year plea offer had Counsel advised him differently.  *See Mario Green v. State,* No. W2012-01099-CCA-R3-PC, 2013 WL 3324989, at *6 (Tenn. Crim. App. June 26, 2013) (concluding that the petitioner failed to present clear and convincing evidence that he would have pleaded guilty where he "did not testify that he would have accepted a plea deal at his evidentiary hearing.").  Hence, Petitioner has failed to show that Counsel's inaccurate estimate caused him prejudice, and he is not entitled to relief on this issue.

### III.  Conclusion

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

s/ Matthew J. Wilson<br>
MATTHEW J. WILSON, JUDGE