SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. GARY E. MOSSO

 
 Docket:
 SJC-13706
 
 
 Dates:
 September 8, 2025 - December 3, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Homicide. Constitutional Law, Assistance of counsel, Plea. Practice, Criminal, Assistance of counsel, Plea, New trial
 
 

             Indictment found and returned in the Superior Court Department on March 8, 1984.
            Following review by this court, 399 Mass. 863 (1987), a motion for a new trial, filed on October 18, 2016, was heard by J. Gavin Reardon, Jr., J., and a motion for reconsideration was considered by him.
            A request for leave to appeal was allowed by Kafker, J., in the Supreme Judicial Court for the county of Suffolk.
            Paul R. Rudof (Michael Hussey also present) for the defendant.
            Donna-Marie Haran, Assistant District Attorney, for the Commonwealth.
            WOLOHOJIAN, J.  At issue is whether the defendant was deprived of his constitutional right to effective counsel when his attorney allegedly ignored his request to initiate plea negotiations with the prosecutor.  We conclude that a claim of ineffective assistance of counsel may be established where a defendant shows both that it was unreasonable in the circumstances for the attorney to ignore the defendant's request to explore the possibility of a plea bargain and that prejudice resulted from the attorney's failure to heed the defendant's reasonable request.  To establish prejudice in this context, the defendant must show that there was a reasonable probability the prosecutor would have accepted the plea offer the defendant requested his attorney to pursue, that there was a reasonable probability that the plea offer would have been presented to and accepted by the judge, and that the loss of the plea opportunity led to a trial resulting in a conviction of more serious charges or the imposition of a more severe sentence.  Here, accepting that the defendant instructed his trial counsel to explore with the prosecutor the possibility of pleading guilty to murder in the second degree and that such a plea was reasonable in the circumstances of this case, and further accepting that trial counsel ignored that instruction, we nonetheless discern no error in the denial of the defendant's motion for a new trial because the defendant failed to show a reasonable probability that the prosecutor would have entertained a stand-alone plea from the defendant in this multidefendant case.  We accordingly affirm the denial of the defendant's motion for a new trial.
            Background.  In 1984, the defendant and his codefendant were convicted, after a joint jury trial, of murder in the first degree by extreme atrocity or cruelty on a theory of joint venture for beating Anthony Tamburro to death.[1]  As a consequence of the verdict, the defendant received a mandatory sentence of life without the possibility of parole.  We affirmed both convictions after conducting plenary review under G. L. c. 278, § 33E.  See Commonwealth v. Sinnott, 399 Mass. 863, 884-885 (1987).
            More than twenty years later, the codefendant filed a motion for a new trial claiming that his attorney had provided ineffective assistance in connection with plea negotiations.  More specifically, the codefendant contended that he had instructed his attorney to "get a deal" before trial, and that the attorney had informed him that the prosecutor would not accept a plea to manslaughter.  He also claimed that the attorney never discussed with him prior to trial the differences between the various types of homicide or their sentencing consequences and options, and that he did not understand them.  The codefendant further claimed that had he been informed of those differences, he would have instructed his attorney to offer to plead guilty to murder in the second degree before trial, and that the offer would have been accepted by the prosecutor and the trial judge.  Finally, the codefendant claimed that, approximately two weeks into trial, his trial counsel suggested that he plead guilty to murder in the second degree, and the codefendant told the attorney to "make that happen."  Although the attorney then attempted to negotiate such a plea, the proposal was rejected by the prosecutor.  The trial then proceeded to its conclusion and, as we have already noted, the codefendant was convicted of murder in the first degree.
            The motion judge (who had not been the trial judge) denied the codefendant's motion for a new trial after an evidentiary hearing at which three witnesses testified:  the trial prosecutor, a respected member of the bar who testified as an expert, and the codefendant.  The judge did not credit the codefendant's testimony that his attorney had not informed him of the differences among the various forms of homicide or of their sentencing consequences.  The judge found that the prosecutor, given the facts and circumstances of the crime, was at all times unwilling to entertain a manslaughter plea.  And the judge also found that the prosecutor would not have considered a plea to murder in the second degree unless both the defendant and the codefendant agreed to it -- a circumstance that never existed.  The motion judge thus concluded that the codefendant's motion for a new trial was premised on "a substantial degree of speculation about what could have happened if [the defendant's] attorney had behaved differently and [the defendant] had also agreed to plead to second degree murder."  Concluding that speculation was an inadequate basis upon which to grant a new trial, the judge denied the codefendant's motion.
            After the codefendant had filed his motion for a new trial, the defendant filed the motion for a new trial that is at issue in this appeal.[2],[3]  Similarly to the codefendant, the defendant claimed that he had received ineffective assistance of counsel relating to plea negotiation.  However, the defendant's motion, as amplified by his testimony, differed in significant details from that of the codefendant.  Unlike the codefendant, the defendant acknowledged that he had an understanding of the differences between the forms of homicide.  He claimed that he had repeatedly asked his trial counsel (defense counsel) before trial to explore the possibility of pleading guilty to something less than murder in the first degree.  And he also claimed that he did not learn until 2016 that defense counsel had ignored his requests, or that the prosecutor had been willing to accept a plea to murder in the second degree if both the defendant and the codefendant agreed to it.
            The same motion judge who had heard and decided the codefendant's motion also heard and decided the defendant's motion.  The motion judge conducted a separate evidentiary hearing on the defendant's motion at which three witnesses testified:  the trial prosecutor, a different respected member of the bar testifying as an expert, and the defendant.  In addition, the parties agreed that the motion judge could rely on the testimony and exhibits introduced in connection with the codefendant's motion for a new trial.  The defendant was unable to submit an affidavit from defense counsel, who had died several years earlier.
            We recite the evidence credited by the motion judge, noting that the motion judge explicitly credited the testimony of the prosecutor and did not credit certain aspects of the defendant's testimony.[4],[5]
            In 1984, when the defendant was both indicted and tried for murder in the first degree, it was the practice of the office of the district attorney for the Middle district (district attorney's office) to wait for defense counsel to indicate if there was an interest in pleading out a case; the district attorney's office would not initiate plea discussions.  Before the trial in this case, the codefendant's attorney repeatedly raised with the prosecutor the possibility of a manslaughter plea.  But those overtures went nowhere because the prosecutor was never willing to entertain a manslaughter disposition given his assessment of the facts and circumstances of the case, and the victim's family's views and feelings.
            Nonetheless, there were aspects of the case that led the prosecutor to conclude that it was an appropriate candidate for a plea to murder in the second degree.  These included the apparently spontaneous nature of the fight that led to the victim's death and the intoxication of the defendant and codefendant.  The prosecutor also considered that the jury might not be sympathetic towards the victim, who was a drug dealer.  He also considered that it would be important to the victim's family that a conviction of murder in the second degree, like murder in the first degree, would carry a mandatory life sentence (albeit one with the possibility of parole).  The prosecutor therefore would have recommended a plea to murder in the second degree to the victim's family and was convinced that he would have been able to persuade them of its wisdom.  He would have also recommended such a plea to the district attorney and was certain, based on his experience and relationship with the district attorney, that his recommendation would have been accepted.  The trial judge was known to accept agreed-upon dispositions, and both the prosecutor and the expert witness opined that the trial judge would have accepted an agreed-upon plea to murder in the second degree in this case.
            However, the prosecutor was not interested in a partial resolution of the case.  The prosecutor was unwilling to assent to an agreed-upon pretrial disposition unless both the defendant and the codefendant agreed to plead guilty to murder in the second degree.  The prosecutor suggested two reasons for this position.  First, a global resolution would avoid putting the victim's family through a trial.  Second, the value of a stand-alone plea from the defendant for obtaining a conviction of his codefendant at trial was diminished by the fact that the defendant had shifted his account of events when interviewed by the police and therefore was subject to impeachment should he testify against the codefendant.  Because defense counsel never broached with the prosecutor a potential plea of any sort, there was never a time when the prosecutor was presented with the possibility of pleading out the case as a whole.[6]  Although the codefendant eventually -- two weeks into trial -- offered to plead guilty to murder in the second degree, the prosecutor at that point was unwilling to entertain the offer because the victim's family had already been subjected to the trauma of trial.
            For the sake of completeness, we recite the salient points of the defendant's testimony at the evidentiary hearing and accept it for purposes of this appeal.  See note 6, supra.  Based on information he learned from others while he was in pretrial detention, the defendant understood the differences between the various forms of homicide and the sentencing consequences of each.[7]  During the period leading up to trial, he asked defense counsel about the possibility of a plea.  More specifically, after defense counsel brought a packet of discovery to him in jail, including witness statements and the autopsy report, he told defense counsel, "You've got to seek a deal, you know, you've got to seek a deal, some kind of deal, because I have no chance."  The defendant was willing to plead guilty to murder in the second degree at that time, although he did not testify that he specifically told defense counsel of that willingness.  Thereafter, defense counsel told the defendant that he was "checking into it" and ultimately reported that "the DA doesn't want any deal."  There was no evidence that the defendant renewed his request to defense counsel after the trial began.
            The motion judge denied the defendant's motion for a new trial.  The judge concluded that there was never a "realistic probability that the defendant could have pleaded [guilty] to second degree murder, as neither defense counsel ever sought that disposition, and [the prosecutor] would only have considered it if both defendants had agreed to it."[8]  At bottom, the judge concluded that the motion for a new trial rested on speculation and denied it on that basis:
"It is not possible to know, under the evidence produced at this late date, what could have, or would have, happened had [the codefendant's counsel, the defendant's trial counsel, and the prosecutor] all behaved differently in 198[4].  The facts available now only show what did happen.  A motion for new trial should not be granted based upon speculation."
            The defendant moved for reconsideration, which the motion judge denied in a margin order.  The defendant then filed a gatekeeper petition pursuant to G. L. c. 278, § 33E, seeking leave to appeal from the denial of the motion for a new trial and the motion for reconsideration.  That petition was allowed by a single justice, who determined that the defendant had "present[ed] a new and substantial question which ought to be determined by the full court" (citation omitted).  Commonwealth v. Watt, 493 Mass. 322, 326 (2024).  The matter is accordingly now before us.
            Discussion.  The defendant argues that he was denied effective representation of counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights when defense counsel ignored "his stated desire to seek a plea from the prosecutor to a lesser form of homicide that would avoid the risk of the harshest possible sentence one could receive in Massachusetts -- life without parole."  He further argues that defense counsel's failure was a form of structural error and that, therefore, no showing of prejudice should be required in order to obtain relief.[9]
            The "right to counsel under art. 12 provides a defendant with at least the same safeguards as the Sixth Amendment," Lavallee v. Justices in the Hampden Superior Court, 442 Mass. 228, 234 (2004), and in at least some contexts art. 12's protections are broader, see, e.g., Commonwealth v. Brown, 494 Mass. 326, 335 (2024).  However, when evaluating a claim of ineffective assistance of counsel in connection with exploring or negotiating a plea, we have interpreted art. 12 coextensively with the Sixth Amendment.  See Commonwealth v. Marinho, 464 Mass. 115, 125-130 (2013); Commonwealth v. Mahar, 442 Mass. 11, 14-15 (2004).  We thus discuss and decide this case under our familiar test for claims of ineffective assistance of counsel under art. 12, which requires that a defendant show that "counsel's performance fell 'measurably below that which might be expected from an ordinary fallible lawyer,' and that his performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Marinho, 464 Mass. at 123, quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  We examine each of the two required prongs in turn.
            1.  Ineffective assistance of counsel -- deficient performance.  The first prong of Saferian requires an inquiry into whether counsel's performance fell below an objective measure of performance by an ordinary fallible lawyer.  This test is a flexible one, and its outcome will depend on the facts and circumstances presented as well as the procedural or other context in which the attorney's performance takes place.  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."  Strickland v. Washington, 466 U.S. 668, 688-689 (1984).  Instead, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  "[O]ur standard for ineffective assistance of counsel under Saferian . . . is a dynamic standard that evolves according to the advancement of professional norms."  Commonwealth v. Sylvain, 466 Mass. 422, 437 (2013), S.C., 473 Mass. 832 (2016).
            The defendant's focus here is on his counsel's performance in connection with exploring a plea bargain.  "It is beyond dispute that a defendant's decision whether to plead guilty or proceed to a trial is a critical stage in a criminal proceeding for which he is constitutionally entitled to the effective assistance of counsel."  Mahar, 442 Mass. at 14.  Accordingly, a defendant is entitled to objectively reasonable performance by counsel during the plea process, which includes the process of negotiating, accepting, or rejecting a plea offer or agreement, Commonwealth v. Camacho, 472 Mass. 587, 603-604 (2015) (defective advice leading to rejection of plea offer); Marinho, 464 Mass. at 127 (failure to communicate prosecutor's interest in possible plea resolution); Mahar, 442 Mass. at 14-17 (rejection of plea offer based on defective advice), as well as the process of entering a guilty plea, Sylvain, 466 Mass. at 437-438 (plea entered on defective advice of counsel).  See Lafler v. Cooper, 566 U.S. 156, 162-163 (2012) (defective advice leading defendant to reject plea offer); Missouri v. Frye, 566 U.S. 134, 147 (2012) (failure to communicate formal plea offer); Hill v. Lockhart, 474 U.S. 52, 56 (1985) (plea entered on defective advice of counsel).  A defendant is "constitutionally entitled to the effective assistance of counsel in negotiating and entering a plea if the defendant chooses not to proceed to trial."  Commonwealth v. Barros, 494 Mass. 100, 106 (2024).  Cf. Commonwealth v. Miranda, 484 Mass. 799, 819-820, cert. denied, 141 S. Ct. 683 (2020) (defendant has control over objectives of defense, including whether to plead guilty).
            That said, a defendant has no constitutional right to receive a plea offer, Commonwealth v. Roman, 489 Mass. 81, 88 (2022); Marinho, 464 Mass. at 127, or to have the Commonwealth accept a plea offer, however reasonable the defendant's offer might be,[10] see Lafler, 566 U.S. at 168.  Nor is there a constitutional right to have a plea accepted by the judge.  Commonwealth v. Dilone, 385 Mass. 281, 285 (1982).  See North Carolina v. Alford, 400 U.S. 25, 38 n.11 (1970).  Indeed, a judge has discretion to refuse to accept a plea "if the judge is not satisfied [as to knowingness, voluntariness, or factual basis], or, if for some other reason the judge determines that the plea or admission would not result in a just disposition of the case."  Reporter's Notes (2015) to Mass. R. Crim. P. 12 (c) (5), Massachusetts Rules of Court, Rules of Criminal Procedure, at 138 (Thomson Reuters 2025).  Mass. R. Crim. P. 12 (a) (3), as amended, 482 Mass. 1501 (2019).
            We have not previously decided whether a claim of ineffective assistance of counsel may lie where counsel is alleged to have failed to convey to the prosecutor a defendant's willingness to plead guilty to a lesser charge and the government has made no formal plea offer.  We consider it but a small step from the principles and cases we have just outlined above to conclude that it may, provided the defendant's plea offer or position is reasonable in the circumstances.  Although "defense counsel does not have an absolute duty to engage in plea negotiations," Marinho, 464 Mass. at 126 n.17, if a defendant asks counsel to initiate or pursue plea negotiations with the prosecutor, it falls measurably below the performance expected of an ordinary fallible lawyer for the attorney to ignore a defendant's reasonable request.  The reasonableness of the defendant's request will turn on the circumstances, which may include (but are not limited to) the reasonableness of the defendant's desired disposition in light of the nature of the crime and the strength of the Commonwealth's case.
            Although professional guidelines are only an indication of prevailing norms of practice and not a measure of constitutional ineffectiveness, see Commonwealth v. Tate, 490 Mass. 501, 512 n.5 (2022); see also Strickland, 466 U.S. at 688-689, we note that the Committee for Public Counsel Services (CPCS) Assigned Counsel Manual outlines a number of additional factors counsel should take into account before conveying a defendant's plea offer to the prosecutor or court:
"[C]ounsel must . . . be satisfied that the plea is voluntary, that the client understands the nature of the charges, that there is a factual basis for the plea or the admission, that the witnesses are or will be available, and that the client understands the rights being waived including:  a trial with or without a jury where the Commonwealth has the burden of proving guilt beyond a reasonable doubt, the right to confront witnesses, and the privilege against self-incrimination."
CPCS, Assigned Counsel Manual § 5(C)(ii), at 4.21 (Sept. 10, 2025).
            All that said, an attorney may not ignore his or her client's reasonable request to open or pursue plea negotiations simply because the attorney believes that the client's offer will or may not be accepted by the prosecutor.  "Plea discussions should be considered the norm and failure to seek such discussions is an exception unless defense counsel concludes that sound reasons exist for not doing so."  Marinho, 464 Mass. at 126 n.17, quoting American Bar Association, Standards for Criminal Justice, Prosecution Function and Defense Function § 4-6.2, at 205 (3d ed. 1993) (ABA Guidelines).[11]  "It is standard practice that 'the attorney should explore all alternatives to trial, including the possible resolution of the case through a negotiated plea or admission to sufficient facts.'"  Marinho, 464 Mass. at 127, quoting CPCS, Assigned Counsel Manual c. 4, at 46 (rev. June 2011).  See Barros, 494 Mass. at 106.
            "Where a new trial is sought based on a claim of ineffective assistance of counsel, the burden of proving ineffectiveness rests with the defendant."  Commonwealth v. Kolenovic, 471 Mass. 664, 673 (2015), S.C., 478 Mass. 189 (2017), quoting Commonwealth v. Montez, 450 Mass. 736, 755 (2008).  Here, the defendant testified that, before his trial on a charge of murder in the first degree carrying a mandatory life sentence without the possibility of parole, he instructed defense counsel to "seek a deal" because, based on his review of the discovery, he had "no chance" at trial.  The defendant understood the differences between murder in the first degree and murder in the second degree, including the sentencing difference between the two -- notably, the difference between a life sentence with the possibility of parole and one with no such possibility.  See G. L. c. 265, § 2 (a), (c).  He also presented evidence that he was willing to plead guilty to murder in the second degree pretrial.  In the prosecutor's assessment, such a plea was a reasonable disposition given the facts and circumstances of the case and given that the conviction would carry a life sentence.  It was undisputed that defense counsel never broached the topic of a plea with the prosecutor.  Based on the evidence the defendant presented in connection with his motion, we accept that he established that he instructed defense counsel to pursue plea negotiations, he was willing to plead guilty to a disposition that was reasonable given the facts and circumstances of the case, and defense counsel failed to convey the proposed disposition to the prosecutor.  Accepting the defendant's evidence for our purposes here, the defendant met his burden of establishing that defense counsel's failure to convey pretrial the defendant's willingness to plead guilty to murder in the second degree fell measurably below the performance that might be expected from an ordinary fallible lawyer.  See United States v. Pender, 514 Fed. Appx. 359, 361 (4th Cir. 2013) (first prong of ineffective assistance of counsel test satisfied by showing that counsel failed to explore plea bargain in mandatory life sentence case).
            2.  Ineffective assistance of counsel -- prejudice.  In this context, a successful claim of ineffective assistance of counsel under art. 12 requires that the defendant not only prove that his attorney's performance fell measurably below that which might be expected from an ordinary fallible lawyer, but also that there is "a 'reasonable probability' that[,] 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Mahar, 442 Mass. at 15, quoting Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.
            Where, as here, counsel's deficiency occurs in the context of negotiating or accepting a plea, a defendant is required to show that counsel's constitutionally ineffective performance affected the outcome of the plea process.  See Camacho, 472 Mass. at 604; Marinho, 464 Mass. at 128-129; Mahar, 442 Mass. at 14-15.  See also Frye, 566 U.S. at 147-148; Hill, 474 U.S. at 59.  Proof of prejudice "cannot be based on mere conjecture or speculation as to outcome."  Marinho, 464 Mass. at 129, quoting People v. Palmer, 162 Ill. 2d 465, 481 (1994), cert. denied, 514 U.S. 1086 (1995).  Instead, to establish prejudice in the circumstances presented here, namely, that in the absence of a plea offer from the Commonwealth the defendant instructed defense counsel to convey his willingness to plead guilty to a reasonable disposition and that counsel then failed to communicate it, the defendant must show a reasonable probability that (1) the Commonwealth would have assented to the offer had it been communicated, (2) the plea offer would have been presented to the court, (3) the plea would have been accepted by the judge, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed.[12]  See Marinho, 464 Mass. at 129.  See also Lafler, 566 U.S. at 163-164, 168; Frye, 566 U.S. at 147-148 (requiring similar showing in case of unconveyed plea offer).  Where these requirements are met, "the fact that the defendant subsequently receive[d] a fair trial does not ameliorate the constitutional harm that occurred in the plea consideration process."  Mahar, 442 Mass. at 15.  This is because "[f]ar from curing the error, the trial cause[s] the injury from the error."  Lafler, 566 U.S. at 166.
            The motion judge did not abuse his discretion in concluding that the defendant failed to meet his burden to show prejudice because, although the prosecutor would have considered a pretrial offer to plead guilty to murder in the second degree, his willingness depended on both the defendant and the codefendant being willing to so plead.  The prosecutor's unwillingness to accept a partial disposition in this multidefendant case had several bases, including that the defendant's value as a witness against the codefendant was diminished by the defendant's inconsistent statements to police, and that a partial resolution would not spare the victim's family from the trauma of trial.[13]  Although the prosecutor was willing to accept and recommend a pretrial resolution in which both the defendant and the codefendant would plead guilty to murder in the second degree, that scenario never presented itself because the codefendant was unwilling to plead guilty to murder in the second degree until the second week of trial.  And, by that time, the prosecutor was unwilling to accept such a disposition because the victim's family had already been put through the trial.  On this record, the motion judge did not err in concluding that "there was never a realistic probability that the defendant could have pleaded to second degree murder," nor did the judge abuse his discretion in denying the motion for a new trial.
Orders denying motions
for a new trial and for
reconsideration affirmed.
 
footnotes

 
            [1] An additional codefendant was tried at the same time as an accessory after the fact.  His trial and conviction have no bearing on this appeal.
            [2] The defendant simultaneously moved for a reduction in verdict under Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), on separate grounds.  Nothing regarding the defendant's rule 25 (b) (2) motion is before us.
            [3] Before filing the motion for a new trial that is under review here, the defendant had filed several additional postconviction motions and petitions, all of which were denied.  These were (1) the defendant's first motion for a new trial, filed in 1984; (2) a second motion for a new trial, filed in 1998, arguing ineffective assistance of counsel based on trial counsel's failure to raise the defense of voluntary intoxication or seek an instruction thereon, and a potential jury tampering issue; (3) a motion to reconsider the denial of his second motion for a new trial, and subsequent gatekeeper petition; (3) a Federal petition for habeas corpus, filed in 2000, which was denied as untimely; (4) his unsuccessful appeal from that denial to the United States Court of Appeals for the First Circuit, and his petition for certiorari to the United States Supreme Court, which was denied; (5) a motion filed in 2002 seeking production of a boot, which was denied as moot; (6) a subsequent gatekeeper petition seeking appellate review of that denial; (7) a third motion for a new trial, together with a motion for reduction in verdict, raising numerous issues including ineffective assistance of counsel based on trial counsel's advice regarding speaking to the police; (8) a motion to reconsider the denial of the third motion for a new trial; and (9) a subsequent gatekeeper petition in which the single justice rejected the defendant's arguments pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001), but suggested that the defendant renew his motion for a reduction in verdict in the Superior Court.
            [4] The motion judge explicitly credited the prosecutor's testimony at the evidentiary hearing on the codefendant's motion for a new trial, and stated that there were no relevant distinctions between that testimony and the prosecutor's testimony at the defendant's evidentiary hearing.
            [5] We recite the testimony the motion judge credited, rather than the judge's findings, because the motion judge's findings often consist of restating a witness's testimony, rather than stating the fact found.  We have previously urged judges to avoid simply recounting the testimony of the witnesses; judges should instead state the facts they find occurred.  See Commonwealth v. Isaiah I., 448 Mass. 334, 339 (2007), S.C., 450 Mass. 818 (2008) ("Findings of fact are drawn from, and consistent with, the evidence and are not merely a recitation of the evidence").  See also Commonwealth v. Tremblay, 480 Mass. 645, 661 (2018) ("what is needed from a trial court judge are credibility determinations as to pertinent matters, and concise, clear, and adequate findings of fact").  Nonetheless, it is clear from an over-all reading of the motion judge's decision which testimony the judge credited and, therefore, the underlying facts he intended to find occurred.
            [6] The motion judge discredited the defendant's assertions in an affidavit dated September 24, 2016, that he had several times asked defense counsel to explore the possibility of a "deal," and that defense counsel had reported that he had spoken to the prosecutor, who said that he "wouldn't enter into any deals."  The motion judge explained that he discredited these averments because they conflicted with the prosecutor's testimony that defense counsel never raised the issue of a plea.  We acknowledge, as the defendant points out, that it is logically possible for the prosecutor's testimony that defense counsel never approached him with a plea offer to coexist with the defendant's averments that defense counsel had told him both that he had spoken with the prosecutor and that he had been informed that the prosecutor would not entertain a plea.  Nonetheless, the motion judge was entitled to discredit the defendant's self-serving affidavit.  See Commonwealth v. Rebello, 450 Mass. 118, 130 (2007) (judge has right to reject defendant's own statements in self-serving affidavit).  And once the motion judge accepted the prosecutor's testimony as true, the defendant's assertions became highly implausible, as they rested on the unlikely notion that defense counsel repeatedly lied to the defendant for no apparent reason about speaking with the prosecutor.  Absent any evidence to help explain why defense counsel would have lied to his client on this topic, or why defense counsel would have disregarded the defendant's purportedly repeated requests that he engage in plea negotiations, there was little reason for the motion judge to credit the defendant's self-serving assertions.  See id.  All that said, given the uncertainty caused by the motion judge's explanation of his reasoning for discrediting the defendant's affidavit, for our purposes on appeal, we accept the defendant's testimony at the evidentiary hearing on his motion.
            [7] The defendant correctly points out that the motion judge stated in his decision that the defendant claimed not to have understood the differences between the various forms of homicide and their consequences because his counsel failed to inform him of them.  In fact, the defendant made no such claim.  The error has no bearing on the outcome of this appeal.
            [8] We acknowledge that the motion judge's statement that "neither defense counsel ever sought that disposition" is not supported by the evidence.  To be sure, the record supports that an offer to plead guilty to murder in the second degree was not made pretrial.  However, it was undisputed that the codefendant's counsel raised the possibility of pleading guilty to murder in the second degree during the second week of trial, and that the prosecutor was unwilling to consider the offer at that time.  We accordingly understand the motion judge's statement to refer to the period before trial, when the prosecutor would have been willing to entertain a joint plea to murder in the second degree.  Moreover, to the extent that the statement implies that the motion judge relied on defense counsel's failure to seek a plea as a reason for denying the motion for a new trial, it is logically infirm, as that failure was precisely the basis for the defendant's claim of ineffective assistance of counsel.  Similarly, however, we understand the motion judge's statement to refer more specifically to the point that the codefendant's counsel never sought a plea to murder in the second degree before trial.
            [9] In light of the extensive postconviction litigation that preceded the filing of the motion for a new trial at issue in this appeal, see note 3, supra, including the filing of multiple motions for a new trial, the Commonwealth argues that the defendant's claim of ineffective assistance of counsel has been waived.  In response, the defendant argues that he did not learn of defense counsel's failure to pursue plea negotiations until 2016.  The motion judge made no clear finding on this point but instead "found" that the defendant "assert[ed]" "that he did not learn about the allegation that [defense counsel] had not sought a plea bargain to second degree murder until [the codefendant] raised it in his 2016 motion for a new trial."  Although the judge's finding is poorly phrased for reasons we have already explained, see note 5, supra, we understand it to mean that the judge accepted the defendant's assertion that he had been unaware of defense counsel's supposed failure to pursue plea negotiations until 2016.  It is therefore implicit that the defendant could not have reasonably raised his ineffective assistance of counsel claim earlier.  On that footing, the judge could consider the defendant's claim of ineffective assistance of counsel despite the defendant's numerous previous motions for a new trial.  See Mass. R. Crim. P. 30 (c) (2) (grounds not raised in previous postconviction motion "are waived unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the" previous motion).  Moreover, "because the substantial risk of a miscarriage of justice standard applicable to waived claims and the standard applicable to ineffective assistance of counsel claims are, insofar as both determine whether error affected the outcome, 'two sides of the same coin,' Commonwealth v. Peloquin, 437 Mass. 204, 210 n.4 (2002), the issue of waiver [on appeal] is without substantive effect."  Commonwealth v. Mahar, 442 Mass. 11, 13 n.4 (2004).
            [10] Generally, the Commonwealth may withdraw a plea offer before it is accepted or the defendant relies on it, as revocation puts the defendant "in no worse position than he would have been if the prosecutor had made no plea bargain offer at all."  Commonwealth v. Johnson, 447 Mass. 1018, 1020-1021 (2006), quoting Commonwealth v. Smith, 384 Mass. 519, 522 (1981).
            [11] The current, 2017 version of the ABA Guidelines provides standards for the duty to explore disposition without trial, § 4-6.1, and for negotiated disposition discussions, § 4-6.2.  American Bar Association, Criminal Justice Standards for the Defense Function §§ 4-6.1, 4-6.2 (4th ed. 2017).  The differences between the third edition of the ABA Guidelines relied on in Marinho and the current, fourth edition have no impact on this case.
            [12] The absence of a formal plea offer from the government has usually defeated a defendant's claim of prejudice as it prevents him from establishing a reasonable probability that the government would have accepted the defendant's proposed disposition.  See Delatorre v. United States, 847 F.3d 837, 846 (7th Cir. 2017); Ramirez v. United States, 751 F.3d 604, 608 (8th Cir. 2014); Merzbacher v. Shearin, 706 F.3d 356, 370 (4th Cir.), cert. denied, 571 U.S. 834 (2013).  But the defendant here presented evidence from the prosecutor establishing that a plea to murder in the second degree would have been a reasonable disposition in the government's view, and the motion judge credited the prosecutor's testimony.
            [13] The defendant argues that the motion judge's finding that the prosecutor would not have accepted a stand-alone plea was clearly erroneous because the prosecutor at one point testified, "I don't really know . . . .  I think I would have done it," when asked whether he would have accepted a plea from the defendant alone.  The defendant takes this isolated portion of testimony out of context, and moreover, he ignores the remainder of the prosecutor's testimony, summarized above, which fully supported the judge's finding.  See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997), quoting Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977) ("A finding is 'clearly erroneous' only when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed'").